UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
2003 DEC -9 P 12: 52

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| JOHN SYLVA, Administrator of the Estate of CHARLES SYLVA,<br>Plaintiff<br><br>v.<br><br>THE CITY OF QUINCY, MICHAEL O'BRIEN, GERRY NICHOLS, JAMES BORDEN, KEVIN TOBIN, ROBERT CROWLEY, and JOHN KELLEY,<br>Defendants | C.A. No.<br><br>**COMPLAINT**<br><br>MAGISTRATE JUDGE _____<br><br>03  12473 REK<br><br>RECEIPT # _____<br>AMOUNT $ 150<br>SUMMONS ISSUED _____<br>LOCAL RULE 4.1 _____<br>WAIVER FORM _____<br>MCF ISSUED _____<br>BY DPTY. CLK. _____<br>DATE 12-8-03 |

## I.  PRELIMINARY STATEMENT

1. This is an action for damages arising from the conduct of defendants which led to conscious pain and suffering and wrongful death of Charles Sylva on or about December 17, 2000. The conduct of the defendants constitutes a deprivation of the civil rights of Charles Sylva as guaranteed by the Constitution and laws of the United States of America, as well as the Declaration of Rights of the Commonwealth of Massachusetts.

## II.  JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §1983. Jurisdiction is established by 42 U.S.C. §§1331 and 1343. Plaintiff invokes the pendant jurisdiction at this Court to hear state claims under G.L. c. 229, §2, and G.L. c. 12, §11I.

## III.  PARTIES

3. Plaintiff John Sylva is the Administrator of the Estate of Charles Sylva and lives in Bristol County, Massachusetts.

4. Defendant The City of Quincy (hereinafter "Quincy") is a duly incorporated municipality within the County of Norfolk, Commonwealth of Massachusetts.

5. Defendant John Kelley is a City of Quincy police officer and is sued in his individual capacity.

6. Defendant Michael O'Brien is a City of Quincy police officer who is sued in his individual capacity.

7. Defendant Gerry Nichols is a City of Quincy police officer who is sued in his individual capacity.

8. Defendant James Borden is a City of Quincy police officer who is sued in his individual capacity.

9. Defendant Kevin Tobin is a City of Quincy police officer who is sued in his individual capacity.

10. Defendant Robert Crowley is a City of Quincy police officer who is sued in his individual capacity.

## IV. FACTS

11. On December 17, 2000, Charles Sylva was arrested for breaking and entering and malicious damage to property.

12. At the time, Charles Sylva was paranoid, disoriented, and ranting and raving that people were trying to kill him.

13. Charles Sylva had previously been diagnosed as suffering from paranoid schizophrenia aggravated by alcohol and polydrug abuse, most recently cocaine.

14. The Quincy police had received many calls on prior occasions relative to Charles Sylva's bizarre and paranoid behavior and they had brought him to hospitals and treatment centers on other occasions.

15. At the police station, Charles Sylva was still in a very agitated, unstable state.

16. As the booking process could not be completed due to Charles Sylva's unstable state, the desk sergeant and booking officer, Defendant Tobin, ordered that he be placed in a cell.

17. Prior to being placed in the cell, Charles Sylva repeatedly pleaded not to be locked up.

18. In violation of City of Quincy police regulations, Charles Sylva was not sent to a hospital on this occasion nor was he seen by any health care personnel.

19. City of Quincy Police Department General Order #91-63(3.4) require that any prisoner in need of medical attention be transported to Quincy Hospital emergency room and that if the prisoner appears mentally ill or unstable, that South Shore Mental Health be notified.

20. Defendants O'Brien, Nichols, and Borden placed Charles Sylva in a cell.

21. Charles Sylva was handcuffed when placed in the cell, according to eyewitnesses.

22. Once in the cell, Charles Sylva continued to rant and yelled out for his brother "John", a Massachusetts State Trooper, and for Arthur Tobin, the Clerk of Courts.

23. Charles Sylva jumped about the cell and banged his head against the walls uninterrupted for almost an hour.

24. Another prisoner in the cell opposite Charles Sylva told investigators that Mr. Sylva "was handcuffed and kept jumping from the toilet to the wall, hitting his head. He was going

back and forth in his cell. He kept falling on his back, landing on the floor and whacking his head on the wall."

25. Several of the defendants observed Charles Sylva's activities in the cell but did nothing.

26. Defendant Crowley was notified by Defendant Tobin that Charles Sylva was ranting and raving in his cell but took no action to protect him.

27. Defendant Kelley, who was the shift supervisor, was in violation of General Order #91-63 (3.2) which makes the Shift Commander "specifically responsible for the safety of all persons."

28. The automatic punch clock to record monitoring of the prisoners was strangely not working only during the critical hours relative to this incident.

29. Nor was the video camera's required by regulation functioning properly that night.

30. Defendant O'Brien failed to monitor the plaintiff with manual checks every 15 minutes.

31. Charles Sylva finally collapsed and was found lifeless about 4:55 a.m.

32. The autopsy revealed fresh bruises and hemorrhages on the arms and legs as well as two anterior rib fractures. There were at least eight distinct and separate blunt force impact sites on the head. There were fresh hemorrhages behind the esophagus and pharynx and in the vocal cords. The brain was swollen. There were prominent circular handcuff abrasions around both wrists.

33. Although Charles Sylva had cocaine in his system at death, he did not die of acute cocaine intoxication. The cocaine may have triggered off the acute paranoid psychotic reaction which would have been easily treated if he had been brought to a hospital.

34. The medical examiner misdiagnosed the cause of death and lost Charles Sylva's heart such that it was not buried with the deceased, much to the deep pain of the deceased's family.

35. The Defendants prevented Charles Sylva from receiving the medical attention he so desperately needed, and allowed him to exhaust himself and hurt himself physically and emotionally for an extended period of time in his cell.

36. Charles Sylva's death was a medically untreated, violent and prolonged acute psychosis with exhaustion and cerebral concussion due to multiple head traumas while he was the full custody and under the complete control of the police.

37. Charles Sylva's death would have been avoided if he had been brought to a medical facility as he had been in the past when his obviously unstable condition demanded it.

### COUNT I
### 42 U.S.C. §1983 CLAIM AGAINST INDIVIDUAL DEFENDANTS

38. Charles Sylva hereby incorporates and realleges the allegations set forth at Paragraphs 1 through 37 above, as if fully set forth herein.

39. The defendants' conduct constituted deliberate indifference toward the welfare of Charles Sylva.

40. Such deliberate indifference violated Charles Sylva's civil rights, as protected under Federal law (42 U.S.C. §1983).

## COUNT II
## 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT THE CITY OF QUINCY

41. Charles Sylva incorporates and realleges the allegations set forth at Paragraphs 1 through 40 above, as fully set forth herein.

42. The City of Quincy's dangerous custom and unwritten policy of handcuffing prisoners put in cells before being booked, and in particular those unstable, and its custom of not sending unstable prisoners to medical facilities rather than jail, contributed to causing the death of Charles Sylva.

## COUNT III
## STATE CIVIL RIGHTS CLAIM UNDER M.G.L. c. 12, §11I
## AGAINST ALL DEFENDANTS

43. The Plaintiff incorporates and realleges the allegations set forth at Paragraphs 1 through 42 above, as if fully set forth herein.

44. The defendants violated Charles Sylva's civil rights by threats, intimidation, and violence.

## COUNT IV
## NEGLIGENCE CLAIM PURSUANT TO M.G.L. c. 258
## AGAINST DEFENDANT CITY OF QUINCY

45. The Plaintiff incorporates and realleges the allegations set forth at Paragraphs 1 through 44 above, as if fully set forth herein.

46. The negligence of the defendants caused Charles Sylva's death.

47. Notice of claim was served on the defendant City of Quincy through its Mayor on December 13, 2002, but no response has been received.

WHEREFORE, Charles Sylva by John Sylva as the Administrator of the Estate of Charles Sylva demands as follows:

(1) Compensatory Damages.

(2) Punitive Damages against all defendants except the City of Quincy.

(3) Attorneys' Fees.

(4) Costs.

(5) Any other remedy which justice requires.

A JURY TRIAL IS DEMANDED.

Respectfully submitted,
The Plaintiff Charles Sylva by
John Sylva as the Administrator
of the Estate of Charles Sylva,
By his attorney,

Stephen Hrones
BBO No. 242860
HRONES & GARRITY
Lewis Wharf-Bay 232
Boston, MA 02110-3927
617/227-4019

Dated: December 9, 2003