UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CA NO. 03-12473REK

**JOHN SYLVA, Administrator of the Estate of
CHARLES SYLVA,**
    **Plaintiff,**

v.

**CITY OF QUINCY, MICHAEL O'BRIEN,
GERRY NICHOLS, JAMES BORDEN,
KEVIN TOBIN, ROBERT CROWLEY,
and JOHN KELLY,**
    **Defendants.**

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the defendants hereby move that summary judgment be entered in their favor. The defendants state there are no genuine issue of material fact, and they are entitled to judgment as a matter of law.

Defendants, by their attorneys,

/S/James W. Simpson, Jr.
Douglas I. Louison   BBO# 545191
James W. Simpson, Jr. BBO#634344
MERRICK & LOUISON
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CA NO. 03-12473REK

**JOHN SYLVA, Administrator of the Estate of
CHARLES SYLVA,**
     **Plaintiff,**

v.

**CITY OF QUINCY, MICHAEL O'BRIEN,
GERRY NICHOLS, JAMES BORDEN,
KEVIN TOBIN, ROBERT CROWLEY,
and JOHN KELLY,**
     **Defendants.**

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**I.**    **STATEMENT OF THE CASE**

This is a civil action in which the plaintiff, as the administrator of the estate of Charles Sylva, alleges in his complaint state and federal civil rights violations. In addition, the plaintiff asserts claims for negligence against the defendants. Specifically, the plaintiff alleges violations of the decedent's Eighth and Fourteenth Amendments actionable pursuant to 42 U.S.C. Section 1983 as well as State claims under M.G.L. c. 12 § 11 H and I and under M.G.L. c. 258.

These claims arise out of the decedent's custody at the Quincy Police Station on December 17, 2000. The plaintiff now seeks damages on behalf of the decedent's estate as a result.

**II.**    **ARGUMENT**

    **A.**    **The Summary Judgment Standard**

Summary judgment is appropriate if "any pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

material facts and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). In fact, the Supreme Court has held:

> ...In our review, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

> The First Circuit has identified what constitutes a genuine issue of material fact:

> To satisfy the criterion of trial worthiness, and thereby forestall summary judgment, an issue must be "genuine," that is, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side. National Amusement, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st. Cir. 1995).

This Court must determine if there are genuine issues of material fact. However, only disputes over facts that might affect the outcome of the suit will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

To defeat this motion, the plaintiffs cannot state mere conclusions or rely only on the allegations contained in the Complaint. The Supreme Court has stated that "[T]he mere existence of a scintilla of evidence in support of the plaintiff's opposition will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

Further, once the movant avers an absence of evidence to support the opposing party's claims, the opposing party "must go beyond the allegations of the complaint and present evidence significantly probative and substantial to establish the existence of an issue of fact that is both "genuine" and "material". Sheinkopf v. Stone, 927 F.2d 1259, 1261, 1262 (1st Cir. 1991); See also Feliciano v. State of Rhode Island, 160 F.3d 780,783 (1st Cir. 1998) citing, Serrano-Cruz v. DFI

Puerto Rico, Inc., 109 F.3d at 25 (1st Cir. 1997).

The defendants need only show, that is, point out to the Court, that there is an absence of evidence to support the non-moving party's case. Celotex Corp. at 325. It is clear there is an absence of evidence to support the plaintiff's claims and therefore said action must be dismissed.

**B.     Eighth Amendment Claims**

   **1.     The Plaintiff Has Failed to Submit Evidence That The Defendants Were Deliberately Indifferent to the Decedent's Serious Medical Needs**

As the Court is aware, "the Eighth Amendment[1] prohibits punishments that are 'cruel and unusual'. Farmer v. Brennan, 511 U.S. 825, 834 (1994) The Supreme Court in Farmer explained further by adding:

> A prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious.....it must result in the denial of minimal civilized measure of life's necessities.......Second, the prison official must have sufficiently culpable state of mind, that is, the official must have deliberate indifference to the inmates health or safety. Thus, to be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement, a prison official must know and disregard and excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 837 (1994); See also Calderon-Ortiz v. Laboy-Alvarado, 300 F.3d. 60 (1st Cir. 2002).

Further, as this Court has explained, "a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" citing McCain v. Scott, 9 F.Supp.2d 1365, 1371-72 (N.D. Ga. 1998). It is not

---

[1] While the provisions of the Eighth Amendment do not extend to pretrial detainees, the Due Process Clause of the Fourteenth Amendment provides them with "rights [which] are at least as great as the Eighth Amendment protections available to a convicted prisoner." Revere v. Massachusetts General Hospital, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); see also Henderson v. Sheahan, 196 F.3d 839, 844 n. 2 (7th Cir.1999) ("Although the Eight Amendment does not extend to pretrial detainees ... the Due Process Clause of the Fourteenth Amendment protects pretrial detainees under the same standard as the Eighth Amendment."); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir.1996) (same).

enough that a reasonable official would or should have known that the prisoner was at risk: the official must actually know of and disregard the risk to incur culpability. Farmer, 511 U.S. at 837-38. Moreover, "a prison official's failure to alleviate a significant risk that he should have perceived, but, did not, cannot be condemned as a violation of the Eighth Amendment." Id.

In this context, "deliberate indifference" means that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837. This standard, requiring an actual, subjective appreciation of risk, has been likened to the standard for determining criminal recklessness. See id. at 839-40 (holding that "subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment"); see also id. at 837-38 (citing to Model Penal Code § 2.02(2)(c) and noting that criminal recklessness requires a person to "consciously disregar[d] a substantial risk of serious harm"). Willful blindness and deliberate indifference are not mere negligence; these concepts are directed at a form of scienter in which the official culpably ignores or turns away from what is otherwise apparent. See Alsina-Ortiz v. LaBoy, 400 F.3d 77 (1st Cir.(Puerto Rico) Mar 09, 2005) (NO. 03-2611); citing Farmer, 511 U.S. at 839-40, 114 S.Ct. 1970; Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir.1994).

The First Circuit has defined a "serious medical need" as either one that a physician has diagnosed and deemed to require treatment, or one that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 18 (1st Cir.1995) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir.1990), cert. denied, 500 U.S. 956, 111 S.Ct. 2266, 114 L.Ed.2d 718 (1991)).

judgment.

In the present case, the plaintiff has absolutely no evidence that any of the individual defendants possessed the requisite state of mind to establish that they were deliberately indifferent to the decedent's serious medical needs.   Simply put, the plaintiff will not be able to produce any evidence that any of the officers in question, knew of and disregarded an excessive risk to the decedent's health or safety.  As the Courts have cited, "a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  Here, in the present case, no inference can be drawn as there was no prior facts from which a high risk of harm to the decedent could be expected.   Moreover, there has been no such showing by the plaintiff that any officer of the Quincy Police  Department ignored an obvious risk of harm to the decedent's serious needs.  When the decedent was brought to the station for booking, it was not so obvious that even a lay person would easily recognize the necessity for a doctor's attention..  Arrestees are brought into the station on numerous occasions upset and uncooperative.  They yell and scream and bang the cell walls.  It was not so obvious to the officers on the night in question that the decedent was in serious need of medical attention.  They were simply waiting for him to calm down so that they could complete the booking process.

Accordingly, the plaintiff's claim under the Eighth Amendment must be dismissed.

### 2. There is No Evidence of an Unlawful Custom, Practice or Policy by The City of Quincy

Municipal liability under section 1983 cannot be based on *respondeat superior*.  <u>Monell v. New York City Dep't of Soc. Svces</u>., 436 U.S. 658, 98 S.Ct. 2018 (1978).  In order to hold a municipality liable under Section 1983 or the MCRA, a plaintiff must "identify a municipal 'policy' or 'custom' that caused his or her injury."  <u>Board of the County Comm'rs of Bryant County v. Brown</u>, 117 S.Ct. 1382, 1388 (1997).  Municipal liability lies only when a municipal policy or custom causes the alleged

constitutional deprivation. Manarite v. City of Springfield, 957 F.2d 953 (1st Cir. 1992). A single incident of misconduct alleged in a complaint does not suffice to show a municipal policy. City of Canton v. Harris, 489 U.S. 378, 387 (1989); Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985)(plurality opinion); See Also, Gallego v. Wilson, 882 F.Supp. 1169 (D.Mass. 1995)(dismissed plaintiff's municipal misconduct claim because a single alleged incident of individual misconduct cannot establish a municipal policy or custom).

The plaintiff must prove a direct link between the policy statement or custom and the constitutional violations. Bowen v. City of Manchester, 966 F.2d 12, 18 (1st Cir. 1992). "[I]solated instances of unconstitutional activity [by subordinates] ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise show deliberate indifference." Maldanado-Denis v. Castillo-Rodriquez, 23 F.3d 576 (1st Cir. 1994).

The plaintiff in this case have alleged absolutely no evidence that the City, or its police Chief embraced a policy or custom under which any official acted to deprive the decedent of any constitutional rights. Accordingly, the plaintiff's state and federal civil rights claims against the City of Quincy and Chief Crowley must be dismissed.

### 3.   Supervisory Claims Against Defendants, Kelly and Crowley

In the First Circuit, "[a] supervisory officer may be held liable for the behavior of his subordinate officers where his action or inaction is affirmatively linked….to [the behavior of his subordinate officers] in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference." Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002); Guiterrez-Rodriquez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Rosenfeld v. Egy, 2003 WL 222119 (D.Mass.). Deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an

individual's constitutional rights." Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995). To show the "deliberate or conscious choice" which is required for such a failure to train claim under §1983, the plaintiff must establish that the supervisors knew that the training to prevent the particular constitutional violations asserted here was required, and deliberately or consciously chose not to provide it. Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998) (Liability criteria for failure to train claims are "exceptionally stringent"). Moreover, if the subordinate officer "has inflicted no constitutional harm", the supervisor cannot be held liable. Wilson, 294 F.3d at 6. As discussed above, all the officers under the supervision of Lt. Kelly effected or caused no violation of the plaintiff's constitutional rights. Further, the plaintiff fails to show that either Robert Crowley or Lt. Kelly knew that a supposed lack of training would cause the plaintiff to suffer constitutional harm, and deliberately or consciously chose not to provide it. Accordingly, any claims under §1983 alleging failure to supervise must be dismissed.

    **C.    The Plaintiff Has Failed to Demonstrate That His State Civil Rights Were Violated by "Threats, Intimidation or Coercion"**

The plaintiff's complaint (Count III.) alleges that the defendants[2] deprived the decedent of his rights under the Constitution and laws of the Commonwealth of Massachusetts.

As the Court is aware, the Massachusetts Civil Right Act ("MCRA") and Massachusetts Constitution creates no substantive civil rights; rather, it provides a mechanism for obtaining relief from the interference or attempted interference with rights conferred by Federal or Massachusetts Law. See M.G.L. c. 12, Sections 11H and I, Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 593 (2001).

---

    [2]    If the plaintiff is asserting a claim under the MCRA against the City of Quincy, this claim would be barred. See Howcroft v. City of Peabody, 51 Mass.App.Ct. 573, 593 (2001) (municipalities and public entities are not "persons" covered under the MCRA)

However, under M.G.L. C. 12, Section 11I, a Plaintiff is required to establish that his exercise or enjoyment of rights secured by the United States and the Commonwealth have been interfered with by "threats, coercion or intimidation".[3] Swanset Development Corp. v. Taunton, 423 Mass. 390, 395 (1996).  Courts have recognized that the "Legislature did not intend to create a vast constitutional tort and thus explicitly limited the state Civil Rights Act's remedy to a situation where derogation of secured rights occurs by threats, coercion or intimidation".  Bally v. North Eastern University, 403 Mass. 713, 717 (1989); Bell v. Mazza, 394 Mass. 176, 182-183 (1985).  These terms have been applied according to their natural connotation, that of forcing submission by conduct calculated to frighten, harass or humiliate.  Smith v. Longmeadow, 29 Mass. App. Ct. 599, 603 (1990) citing Bell, Supra, at 183-184; Pheasant Ridge Assoc. Ltd. Partnership v. Burlington, 399 Mass. 771, 781-782 (1987); Deas v. Dempsey, 403 Mass. 468, 470-471 (1988); Bally, Supra, at 718-720.

In the present case, the plaintiff has failed to submit sufficient evidence that the decedent was threatened, coerced or intimidated by any of the defendants.

In Pheasant Ridge, supra, members of the Board of Selectmen made verbal statements that they were going to take any action necessary to block the development and approval of a permit for construction of Plaintiffs housing units.  The Plaintiffs argued that these statements constituted threats and intimidation.  Pheasant Ridge Assoc. Ltd. Partnership, 399 Mass. at 781.  However, the Court stated that the Selectmen's conduct was a preventive act which did not threaten or coerce.  Id. Applying this rationale to the case at bar, the Defendants' actions here, did not rise to the level of

---

[3] In Delaney v. Chief of Police of Wareham, 27 Mass. App. Ct. 398 (1989) the phrase, "threats, intimidation and coercion" is defined as follows: "threats" are acts or language by which another is placed in fear of injury or damage; "intimidation" is the creation of fear to compel conduct; and "coercion" is the active domination of another's will. Id. at 409.

threats, coercion or intimidation.

There is no evidence of any physical threats, intimidation or coercion by the defendants to accomplish any such deprivation. The Supreme Judicial Court in <u>Bally</u>, said that a plaintiff suing under the same statute had failed to offer adequate evidence to support a claim under the Civil Rights Act because he had not demonstrated that the defendants used <u>physical</u> threats intimidation or coercion to accomplish this deprivation. <u>Bally</u> at 717.

The Supreme Judicial Court has also repeatedly pronounced that a defendant can be held liable under the Civil Rights Act only in situations that "involve an actual or potential physical confrontation accompanied by a threat of harm." <u>Layne v. Superintendent, Mass. Correctional Inst.</u>, 406 Mass. 156, 546 N.E. 2d 166 (1989); <u>See also</u> <u>Wiletts v. Roman Catholic Archbishop</u>, 411 Mass. 202, (1991); <u>Longval v. Commissioner of Correction</u>, 404 Mass. 325, 535 N.E. 2d 588 (1988).

In the present case, the plaintiff has no evidence whatsoever of threats, intimidation or coercion on the part of the any of the defendants. Accordingly, the plaintiff's claims under the MCRA and Massachusetts Constitution must be dismissed.

### D.     The Individual Defendants Are Entitled to Qualified Immunity

Qualified immunity protects government officials, such as the individual defendants, who wield discretionary powers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) *cited in* <u>Burns v. Loranger</u>, 907 F.2d 233, 235 (1st Cir. 1990). Thus, "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard". <u>Davis v. Scherer</u>, 468 U.S. 183, 190 (1984). The applicability of this defense is a pure question of law and the standard is not

demanding. Hall v. Ochs, 817 F.2d 920, 924 (1st Cir. 1987). The plaintiff has failed to produce any evidence that the defendant police officers acted unreasonably.

As the Court of Appeals for the First Circuit has stated, the "applicable standard" for qualified immunity is an objective one and therefore:

> Because qualified immunity does not address the substantive viability of a section 1983 claim, but rather the objective reasonableness of a defendant's actions, a plaintiff who is entitled to prevail on the merits is not necessarily entitled to prevail on the issue of qualified immunity. Amsden v. Moran, 904 F. 2d 748, 751 (1st Cir. 1990).

Issues of qualified immunity require the Court to address two questions. First, the Court must determine whether the right at issue was "clearly established". In this context, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 482 U.S. 635, 640 (1987). Next, the Court must "determine whether defendants reasonably should have comprehended that their specific actions transgressed those "clearly established" rights. Amsden, at 752.

Qualified immunity is a "necessary compromise" between the need to provide remedies to individuals whose constitutional rights have been violated and the necessity of protecting public officials from insubstantial lawsuits which may deter them from carrying out their official responsibilities. Rodriques v. Furtado, 410 Mass. 878, 883 (1991). Qualified immunity protects "all but the plainly incompetent or those who knowingly violated the law" and allows ample room for mistaken judgment. Hunter v. Bryant, 112 S.Ct. 534, 537 (1991) (*per curiam*); Malley v. Briggs, 475 U.S. 335, 343 (1986); Roy v. Lewiston, 42 F.3d 691 (1st Cir. 1994).

It is important that the issue of qualified immunity be decided as soon as possible in order to make the protection meaningful. The Supreme Court has stated because the immunity is

-10-

...<u>immunity from suit</u> rather than a mere defense to liability ..., we have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. <u>Hunter v. Bryant</u>, 116 L. Ed 2d 589 (1991) (citations omitted).

In <u>Hunter</u>, the Court concluded that the question of immunity should be decided by the Court long before trial. Also, the Court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be construed four years after the fact.

Likewise, under Massachusetts Law, the doctrine of qualified immunity "shields public officials who are performing discretionary functions, not ministerial in nature, from civil liability in § 1983 [and MCRA] actions if at the time of the performance of the discretionary act, the constitutional or statutory right allegedly infringed was not 'clearly established'." <u>Laubinger v. Department of Rev.</u>, 41 Mass.App.Ct. 598 (1996).

In the instant case, the individual defendants at all times acted objectively reasonably under the circumstances. There is no evidence that they violated clearly established law. As noted above, there is no evidence that they were deliberately indifferent to the decedent's serious medical needs. Accordingly, all individual defendants are entitled to qualified immunity.

### E.     The Plaintiff Failed to Properly Present His Claim Pursuant to M.G.L. c. 258

As the Court is aware M.G.L. c. 258 § 4 provides:

"[a] civil action shall not be instituted against a public employer on a claim for damages . . . unless the claimant shall have first presented his claim in writing to the executive officer of such public employer . . . and such claim shall have been finally denied by such executive officer in writing and sent by certified or registered mail . . . ." M.G.L. c. 258, § 4.

It is well settled under Massachusetts law that a claimant's failure to make presentment of his claim prior to commencing an action against a public employer under the Tort Claims Act subjects his complaint to dismissal for failure to state a claim upon which relief can be granted. M.G.L. c.

-11-

258, § 4; G & B Associates, Inc. v. City of Springfield, 39 Mass. App. Ct. 51, 653 N.E.2d 203 (1995).

In enacting the Massachusetts Tort Claims Act as an exception to the sovereign immunity doctrine, the Legislature explicitly mandated that claimants satisfy the notice prerequisites of M.G.L. c. 258, § 4. The Courts have correctly applied the language of § 4 strictly. Weaver v. Com., 387 Mass. 43, 45-49 (1982); Fearon v. Com., 394 Mass. 50 (1985). As the Court observed in Weaver, presentment gives the appropriate official the opportunity to study the claim and to make an appropriate disposition before suit is filed. Weaver, 387 Mass. at 45-49. The Legislature explicitly required this procedure in order to permit the Executive Officer time to investigate, negotiate, and settle claims. The Tort Claims Act presentment requirement ensures that responsible public officials receive notice of claim so that the official can investigate to determine whether or not the claim is valid, preclude payment of inflated or non-meritorious claims, settle claims expeditiously, and take steps to ensure that similar claims will not be brought in the future. Martin v. Commonwealth, 53 Mass.App.Ct. 526 (2002) quoting, Lodge v. District Attorney for the Suffolk Dist., 21 Mass.App.Ct. at 283, 486 N.E.2d 764, See also Gilmore v. Com., 417 Mass. 718 (1994). The presentment requirement of the Tort Claims Act may not be satisfied by constructive notice; actual presentment to a designated executive officer is required. Berube v. City of Northhampton, 413 Mass. 635 (1992). The Town need not show prejudice resulting from the plaintiff's failure to give notice. Weaver, at page 49. Thus, a plaintiff is barred from suit if he fails to give timely presentment to the appropriate official. Commesso v. Hingham Housing Authority, 399 Mass. 805 (1987).

In the present case, the plaintiff <u>never</u> sent a presentment letter to any executive officer for the City of Quincy. As such, all claims brought under M.G.L. c. 258 must be dismissed.

### III.     CONCLUSION

Based on the above-mentioned arguments, the defendants respectfully request that this

Court enter summary judgment in its favor and dismiss all claims against them.

                                       The defendants, City of Quincy et al.,
                                       By their attorneys,

                                       /S/James W. Simpson, Jr.
                                       Douglas I. Louison   BBO# 545191
                                       James W. Simpson, Jr. BBO#634344
                                       MERRICK & LOUISON
                                       67 Batterymarch Street
                                       Boston, MA 02110
                                       (617) 439-0305

**Certificate of Service**

I, James W. Simpson, Jr, do certify that on the 8th day of April 2005, I served the foregoing on all the following counsel of record via electronic filing and first class mail:

        Stephen B. Hrones, Esq.
        Hrones & Garrity
        Lewis Wharf - Bay 232
        Boston, MA 02110


                /S/James W. Simpson, Jr.
                        James W. Simpson, Jr.

**CERTIFICATION PURSUANT TO L.R. 7.1 (A)(2)**

The undersigned certifies that he attempted to confer with plaintiff's counsel and attempted in good faith to resolve or narrow the issues presented in this motion.

                /S/James W. Simpson, Jr.
                James W. Simpson, Jr.