UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CA NO. 03-12473REK

JOHN SYLVA, Administrator of the Estate of
CHARLES SYLVA,
    Plaintiff,

v.

CITY OF QUINCY, MICHAEL O'BRIEN,
GERRY NICHOLS, JAMES BORDEN,
KEVIN TOBIN, ROBERT CROWLEY,
and JOHN KELLY,
    Defendants.

### DEFENDANTS, L.R. 56.1 STATEMENT OF MATERIAL FACTS UPON WHICH SUMMARY JUDGMENT IS SOUGHT

    In support of their motion for summary judgment and pursuant to the requirements of Rule 56.1 of the Local Rules of the United States District Court for the District of Massachusetts, the defendant submits the following statement of material facts of the record as to which they contend there are no material dispute to be tried.

1. On December 17, 2000, Charles Sylva, (hereinafter "Decedent") was arrested by the Quincy Police Department at approximately 3:21 a.m. on the charges of Breaking and Entering at night with the intent to commit a felony and malicious destruction of property. See Quincy Police Department Arrest Report, Exhibit "A" and deposition testimony of Thomas Gaeta, pages 8-19 Exhibit "B".

2. Officer Thomas Gaeta of the Quincy Police Department had been dispatched to 43 Quincy Avenue after a report of a man screaming in front of 39 Quincy Avenue. When Officer Gaeta arrived on scene, he observed the decedent in the street yelling at a group of fireman who were stationed across the street. Officer Gaeta spoke to the decedent who had dried blood on his hands. The decedent explained to the Officer that he had to break into 43 Quincy Avenue to "protect his brother's business." See Quincy Police Department Arrest Report, Exhibit "A" and deposition testimony of Thomas Gaeta, pages 8-19 Exhibit "B".

3. Officer Gaeta and Officer Dowling went to 43 Quincy Avenue and observed a window to the front door broken and pieces of glass and wood scattered around the doorway. A witness came forward and indicated that she observed the decedent screaming out front of 43 Quincy Avenue and heard a lot banging. Quincy Police Department Arrest Report, Exhibit "A" and deposition testimony of Thomas Gaeta, pages 17-20 Exhibit "B".

4. Based on his investigation, Officer Gaeta placed the decedent under arrest and transported

him to the Quincy Police Station. The decedent was calm during the drive to the station and was later turned over to the booking officers at the Quincy Police Department. Quincy Police Department Arrest Report, Exhibit "A" and deposition testimony of Thomas Gaeta, Exhibit pages 18-22,"B".

5. At the station, the decedent refused to comply with the booking and was placed in a holding cell until he would cooperate and be properly booked. Sgt. Kevin Tobin was the booking officer on the night in question. The decedent had been arrested by the Quincy Police Department on numerous occasions over the years and it was not uncommon for him to act inappropriately or act out of control during the booking process. See deposition testimony of Sgt. Kevin Tobin, pages 13-22, Exhibit "C" and deposition testimony of Officer Nichol, pages 9, 17,,20, 21 Exhibit "E" and deposition of Robert Crowley, pages 23-26, Exhibit "I".

6. After being placed in his cell, the decedent began yelling and screaming. Officer O'Brien, who was assigned as the "wagon man", checked the cell block every 15 minutes. Officer O'Brien recorded each check in a written log because the automated system was not operational. Additionally, the decedent's cell was put on a video monitor which was observed by Officer Nichol who was assigned as the "chauffeur". See deposition testimony of Officers O'Brien, pages 12-33 and Nichol, pages 9-11, 27-28 Exhibits "D" and "E" and manual log sheet, Exhibit "F".

7. At approximately 4:30 a.m., the decedent began to jump around in the cell and press his face against the plexiglass window while screaming and yelling. The decedent continued this behavior for approximately 20 minutes. It did not appear to the officers that the decedent was hurting himself, but just jumping around the cell. See deposition testimony of Officer O'Brien, pages 23-24, Exhibit "D" and Officer Nichol, pages 28-29"E".

8. Around 4:55 a.m., Officer O'Brien looked at the monitor and could not observe the decedent in his cell, he went to the cellblock to conduct a visible inspection and found the decedent lying on the floor unconscious. Officer Nichol and Sgt. Tobin were called to the cellblock where CPR was administered. An ambulance was called to the cellblock area and the decedent was transported to the Quincy Medical Center where efforts to revive him were unsuccessful. See deposition testimony of Officers O'Brien, pages 29-31 and Nichol, page 40,Exhibits "D" and "E".

9. The defendant, John Kelly, was the Lieutenant and was the shift Lieutenant on the night in question. See deposition testimony, page 12 Exhibit "H"

10. The defendant, Robert Crowley, was a Detective Captain and not working on the night in question. He has since been promoted to Chief of Police. See deposition testimony of Robert Crowley, pages 21-22, Exhibit "I".

11. An autopsy was conducted by the Office of the Chief Medical Examiner for the Commonwealth of Massachusetts who opined as to the cause of death. Dr. Leonard Atkins opined that the decedent's death was caused by "acute cocaine intoxication". See postmortem examination report, Exhibit "G".

        The defendants, City of Quincy et al.,
By their attorneys,

/S/James W. Simpson, Jr.
Douglas I. Louison   BBO# 545191
James W. Simpson, Jr. BBO#634344
MERRICK & LOUISON
67 Batterymarch Street
Boston, MA 02110
(617) 439-0305

## Certificate of Service

I, James W. Simpson, Jr, do certify that on the 8th day of April 2005, I served the foregoing on the following counsel of record via electronic filing and first class mail:

Stephen B. Hrones, Esq.
Hrones & Garrity
Lewis Wharf - Bay 232
Boston, MA 02110


/S/James W. Simpson, Jr.
James W. Simpson, Jr.