UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JOHN SYLVA, Administrator of the | ) | C.A. NO. 03-12473-REK |
| Estate of CHARLES SYLVA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE CITY OF QUINCY, MICHAEL | ) | |
| O'BRIEN, GERRY NICHOLS, JAMES | ) | |
| BORDEN, KEVIN TOBIN, ROBERT | ) | |
| CROWLEY, and JOHN KELLEY, | ) | |
|     Defendants. | ) | |
| | ) | |

**PLAINTIFF SYLVA'S OPPOSITION TO THE DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

The Plaintiff opposes the summary judgment motion of the Defendants on the grounds that material issues of fact are still in dispute which must be decided by a jury. The Plaintiff hereby incorporates his statement of material facts filed contemporaneously with the instant memorandum.

**<u>SUMMARY JUDGMENT STANDARD</u>**

Summary judgment is required only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. The evidence before the Court must be construed "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." <u>Feliciano de la Cruz</u> v. <u>El Conquistador Resort & Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000).

Once the moving party has served a properly supported motion asserting entitlement to summary judgment, the burden is on the non-moving party to present evidence showing the

existence of a trial-worthy issue. Gulf Coast Bank & Trust Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004), citing Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). For the purpose of summary judgment, an issue of fact is "genuine" if it "may reasonably be resolved in favor of either party." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (citations omitted). "Material" facts are those which possess "the capacity to sway the outcome of the litigation under the applicable law." Nat'l Amusements v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).

## ARGUMENT

### I.   THE DEFENDANT OFFICERS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S DUE PROCESS CLAIM

The Defendants are not entitled to summary judgment on Plaintiff's due process claim because disputed material issues of fact still exist as to whether the Defendants were deliberately indifferent to the Plaintiff's "patent and severe medical needs." Alsina-Ortiz v. Laboy, 400 F.3d 77, 80 (1st Cir. 2005). Courts do not require medical documentation of the Plaintiff's "medical need" when it is objectively obvious based on the facts of the case. See Garretson v. City of Madison Heights, 2005 U.S. App. LEXIS 7164 at *10 (6th Cir. Apr. 27, 2005), citing Farmer v. Brennan, 511 U.S. 825 (1994).

In defining "deliberate indifference" courts have held that "[it is] not mere negligence…" Alsina-Ortiz, 400 F.3d at 82. However, deliberate indifference is also "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer, 511 U.S. at 835. As a result, courts have settled on the notion that, in order to establish "deliberate indifference," a plaintiff must only show that a defendant was reckless. Id. at 836. In assessing whether the Defendants displayed recklessness, this Court must apply a subjective

test.  The Plaintiff must show that "the [Defendants] kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."  Id. at 837.

Not only were the Defendants in this case deliberately indifferent to the Plaintiff's medical needs, but reasonable officers in their places would have known that such actions violated the Plaintiff's clearly established due process right to medical treatment.  Deliberate indifference to medical needs was clearly established as a constitutional violation by, at the latest, 1994, when the Supreme Court decided Farmer, 511 U.S. at 825,[1] and more likely by 1983 when the Court decided Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  See Consolo v. George, 58 F.3d 791, 795 (1st Cir. 1995) (addressing qualified immunity for deliberate indifference claims).  As such the Defendants are not qualifiedly immune from suit.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

### A.  THE PLAINTIFF HAS OFFERED SUFFICIENT EVIDENCE THAT THE DEFENDANTS WERE DELIBERATELY INDIFFERENT TO HIS MEDICAL NEEDS

Since the Plaintiff was a detainee and not a prisoner, his claim for denial of medical care is analyzed under the Due Process Clause of the Fourteenth Amendment, as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment.  Burrell v. Hampshire County, 307 F.3d 1, 7 (1st Cir. 2002), citing Bell v. Wolfish, 441 U.S. 520, 545 (1979) (the Due Process Clause protections are *at least* as great as those under the Eighth Amendment) (emphasis added).  In Farmer, 511 U.S. at 835, the Supreme Court established a two-part test for claims alleging unconstitutional denial of medical care.  First, the deprivation alleged must be sufficiently serious.  Second, the plaintiff must show that prison officials possessed a sufficiently

---

[1] Although Farmer was the first case to precisely articulate the "deliberate indifference" standard, the Court chose the more stringent "subjective test" from the two differing methods that had been employed by the Courts of Appeals.  As a result, it acted as more of a clarification of constitutional principles, rather than an expansion of rights putting state actors on notice for qualified immunity purposes.

culpable state of mind, namely one of "deliberate indifference" to an inmate's health or safety. Id. This Court must analyze "deliberate indifference" subjectively, in other words, from the Defendant's point of view. Id. at 837. However, a state-of-mind issue, such as the existence of deliberate indifference, usually presents a jury question. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

In the case at bar, the Plaintiff has offered sufficient evidence to satisfy both factors of the Farmer test, thus defeating the Defendants' motion for summary judgment. First, the Plaintiff's serious need for medical assistance was objectively obvious since he was agitated and disturbed from the moment he entered the station and repeatedly banged his head against the prison wall until he died from multiple brain hemorrhages. Second, the Defendants[2] were aware of his need for medical attention but chose to ignore it, since several of the Defendants observed the Plaintiff in his agitated and self-destructive state—jumping from wall to wall, banging the walls of his cell and smashing his head into the window—but decided to leave him handcuffed in his jail cell.

### 1. The Plaintiff had serious medical needs

The "seriousness" of a detainee's need for medical care can be determined by reference to the effect of the delay of treatment. Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990). Courts do not require medical documentation of a "serious medical need" when it is objectively

---

[2] The Defendants argue in their motion that the Plaintiff cannot sustain his claim for supervisory liability. See Def. Motion for Sum Judg. at 6. Yet that misstates Plaintiff's contention which is that the Defendants Kelly and Crowley are liable for their own individual actions, in addition to their liability as supervisors. Under §1983, a supervisor is liable if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. See Baker v. Monroe Township, 50 F.3d 1186, 1190-91 (3rd Cir. 1995). Furthermore, even if this Court credits the Defendant's characterizations, the Plaintiff has offered sufficient evidence of Crowley and Kelly's liability as mere supervisors. See Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1981) ("when a supervisory official is placed on actual notice of a prisoner's need for physical protection or medical care, administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety.") (Internal quotation omitted).

obvious based on the facts of the case.  <u>Garretson</u>, 2005 U.S. App. LEXIS 7164 at *10, <u>citing</u>

<u>Farmer</u>, 511 U.S. at 825.

It cannot be disputed that the Plaintiff has offered sufficient evidence to satisfy the first

portion of the <u>Farmer</u> test.  It is clear, even taking the evidence in a light most favorable to the

Defendants, that the Plaintiff had a serious need for medical care when he was placed in the jail

cell at the Quincy Police station.  The "seriousness" here is highlighted by the fact that the

Defendants' failure to intervene and obtain medical attention resulted in the Plaintiff's death.

The objective requirement is satisfied because the need for this medical care would be obvious

even to lay personnel.  <u>Mahan</u> v. <u>Plymouth County House of Corrections</u>, 64 F.3d 14, 18 (1st

Cir. 1995).  The Defendants cannot rationally dispute the Plaintiff's contention that it is not

conducive to health and safety for a detainee, in an apparently agitated state, to repeatedly smash

his head into a concrete wall.  <u>Cf</u>. <u>Board</u> v. <u>Farnham</u>, 394 F.3d 469, 481 (7th Cir. 2005) (an

inmate's dental problems are an objectively serious medical need).

In <u>Consolo</u>, 58 F.3d at 792, the defendant officers appealed from a plaintiff's verdict for

violations of the right to medical care.  In that case, the officers had brought the plaintiff into the

police station with a fractured pelvis and subsequently took him to the hospital.  On appeal, the

defendants argued that they were entitled to a judgment as a matter of law or, in the alternative,

that they were qualifiedly immune.  <u>Id</u>. at 794.  The court denied both requests and affirmed the

judgment of the district court.  <u>Id</u>. at 795.  It found that the verdict could have been premised

upon a finding that "the officers' deliberate indifference caused Consolo's medical condition to

worsen, but also upon a finding that their deliberate indifference left him in pain and suffering

for a longer period than would otherwise have been the case had he been afforded prompt

medical attention."  <u>Id</u>. at 794.

In the case at bar, the Defendant officers actions are much more egregious than the officers in Consolo. Unlike in Consolo, the Defendants in this case did not bring the Plaintiff to the hospital until it was too late. Furthermore, the plaintiff in Consolo merely suffered from a broken pelvis, whereas here the Plaintiff suffered from an acute psychiatric condition which caused him to repeatedly smash his head against the wall until he hemorrhaged to death. Based on these facts, the Defendants' contention that the Plaintiff did not have a serious, obvious medical need is simply untenable.

**2. The Defendant officers were aware of the risk of serious harm to the Plaintiff but chose to ignore it**

Although the Plaintiff bears the burden of proving the Defendants' subjective awareness of the Plaintiff's serious medical needs, this element is subject to proof by "the usual ways." Farmer, 511 U.S. at 842. Thus, the Supreme Court noted that it was permissible for courts to infer from circumstantial evidence that a prison official had the requisite knowledge. Id. at 842. Moreover, the Court warned that a prison official may "not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." Id. at 843 n.8.

The most compelling evidence in this case of the Defendants' deliberate indifference is the State Police Report of Trooper Lilly. In that report, Defendant O'Brien is quoted as stating that he observed the Plaintiff "banging himself around the cell . . . smashing his head off the window . . .[and] acting deranged." See Plaintiff's Statement of Mat. Facts at 17. If true, that statement would show that O'Brien was subjectively aware of the Plaintiff's serious need for medical treatment. Given that no one in the police station sought that treatment, the Plaintiff has satisfied his burden showing the Defendants' "deliberate indifference."

Furthermore, O'Brien's statement is corroborated by the statements given to the State Police by another detainee, Michael Gavin. Gavin told the investigating officers that Sylva was "flopping his body around the cell and banging his head off of the wall." See Plaintiff's Statement of Mat. Facts at 15. In addition, several of the Defendant officers admitted that Sylva was extremely agitated when he was brought in to the police station, that he was making a lot of noise in his cell, that he was continuously shouting for his brother, John, and Arthur Tobin, a clerk magistrate, that he was jumping from one side of the cell to the other, and that he was banging against the walls. See Plaintiff's Statement of Mat. Facts at 5-9, 11, 17, 26, 29. Finally, if O'Brien was aware of the Plaintiff's need for medial care, it is reasonable to infer the other Defendants were as well. See United States v. Zurosky, 614 F.2d 779, 786 (1st Cir. 1979) (Holding that the First Circuit follows the "fellow officer rule," which states that "joint knowledge of [officers'] activities could legitimately be imputed to all agents acting in concert.")

The facts of this case are nearly identical to those in Elliott v. Cheshire County, 940 F.2d 7, 12 (1st Cir. 1991), where the Court reversed the granting of an individual officer's summary judgment motion in a prison suicide case. In Elliott, a schizophrenic inmate was brought into county jail and placed in a cell. The booking officer was not informed by the arresting officer of the plaintiff's history of mental illness. Despite this illness, the plaintiff seemed untroubled and his behavior did not initially arouse concern among the corrections staff. Nevertheless, several days later he was found dead, hanging by a sheet from an overhead fire sprinkler. Id. at 9.

The evidence presented by the plaintiff at summary judgment included affidavits from two of the plaintiff's fellow detainees stating that he was extremely upset at not being allowed to call his parents, that he told a guard that he wanted to drown himself in the toilet, that he asked a fellow detainee what would happen if he ate soap or swallowed paper towels, that he expressed

concern that the drinking water was contaminated, that he banged his head against the bars of his cell and that he tried to jam his head underneath a shelf, explaining to the detainee that he was trying to snap his neck.  Finally, he also told a detainee that he wanted to end his life.  Id.

The individual defendant admitted that she knew about the head banging, the soap, and the drinking water, but not about the suicide threats.  Id. at 10.  The court reversed the district court and found that summary judgment on the deliberate indifference claim was not appropriate because the defendant "knew something of [the Plaintiff's] self-destructive behavior (the head-banging)" and because a triable issue existed as to whether she knew about the suicide threats.  Id. at 11.

Similarly, in the case at bar, a triable issue exists as to whether the Defendants were aware of the Plaintiff's self-destructive behavior.  The Defendants admit awareness of certain aspects of the Plaintiff's actions the night in question, but deny others.  Furthermore, as in Elliott, the Plaintiff has offered evidence from a fellow detainee (and O'Brien himself) that the Defendants were aware of the Plaintiff's most destructive actions, namely smashing his head against the wall.  Finally, unlike in Elliott where the plaintiff was only disruptive once he was placed in the cell, here the Plaintiff was in his agitated state from the moment he entered the station, further supporting the notion that all the Defendant officers were aware of, and ignored, his need for medical care.  See also Foelker v. Outagamie County, 394 F.3d 510, 513 (7th Cir. 2005) (defendants deliberately indifferent when jury could infer they were aware plaintiff had not taken his methadone, was exhibiting signs of withdrawal, and thus there was something seriously wrong); Sealock v. Colorado, 218 F.3d 1205, 1208 (10th Cir. 2000) (affirming finding of deliberate indifference where defendant failed to call ambulance despite having observed that

plaintiff was sweating, vomiting and appeared very pale, and despite knowing that he had a crushing pain in his chest, had trouble breathing, and had been vomiting all night).

### B. THE DEFENDANT OFFICERS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

#### 1. The issue was waived

The Defendants waived their qualified immunity defense because they failed to adequately address the issue in their motion for summary judgment.  See Guzman-Rivera v. Rivera-Cruz, 98 F.3d 664, 668 (1st Cir. 1996)  ("[W]e believe that the defense of qualified immunity may be deemed to have been waived if it is not raised in a diligent manner during the post-discovery, pre-trial phase."); Howes v. Hitchcock, 66 F. Supp. 2d 203, 209-210 (D. Mass. 1999) ("In the First Circuit, a trial court has the discretion to find a waiver [of qualified immunity] if a defendant fails to assert the defense…") (citation omitted); see also Airport Impact Relief, Inc. v. Wykle, 192 F.3d 197, 205 (1st Cir. 1999) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . .")

In the Defendants' motion for summary judgment, the entire qualified immunity analysis consists of a general outline of the relevant framework under which courts have analyzed qualified immunity.  See Def. Motion for Sum Judg. at 9-11.  No effort is made to apply the boilerplate principles of law to the facts of this case, nor are the facts of any case laid out for this Court to compare to the case at bar.  The only argument made by the Defendants that addresses qualified immunity is their assertion is that they acted "reasonably" and did not violate "clearly established law."  Nowhere in the motion is there a discussion of which laws are clearly established for claims of denial of medical care, nor is there a discussion of what particular behavior should be considered reasonable.  Given that "reasonableness" is a fact-specific

9

inquiry, the failure of the Defendants to argue in any way that the facts of this case warrant a finding of qualified immunity should be deemed a waiver of that defense. See Guzman-Rivera, 98 F.3d at 668.

> **2.    Even if the issue was not waived, a reasonable officer would have known he was violating the Plaintiff's clearly established constitutional rights**

Even if this Court does not find that the issue of qualified immunity was waived, the Defendant officers are not qualifiedly immune because 1) the facts alleged, taken in the light most favorable to the Plaintiff show the officers' conduct violated a constitutional right; (2) the right was clearly established at the time of its alleged violation; and 3) reasonable officers in the Defendants' places would have known their conduct was unconstitutional. Kauch v. Dep't for Children, Youth and Their Families, 321 F.3d 1, 4 (1st Cir. 2003).

In analyzing whether a constitutional right has been clearly established, it is not necessary for the particular violation in question to have been previously held unlawful. Anderson v. Creighton, 483 U.S. 635, 640 (1987); see also Mitchell v. Forsyth, 472 U.S. 511, 535 n. 12 (1985) (holding that a clearly established right does not require judicial precedent to that effect). Instead, a clearly established constitutional right exists in the absence of precedent where "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. To that extent, government officials are considered "on notice" that conduct is violative of established law if the state of the law at the time gave them "fair warning" that their conduct would be unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (2002).

As discussed at length above, the Defendants violated the Plaintiff's right to medical care with their deliberate indifference to his serious medical needs. See supra at 2. Furthermore, the

right to medical care was clearly established long before the Defendants' violation of the

Plaintiff's rights.  This Circuit held in <u>Consolo</u>, 58 F.3d at 795, that the denial of adequate

medical care was clearly established as a constitutional violation when the Supreme Court

decided <u>Revere</u> v. <u>Mass. Gen. Hosp.</u>, 463 U.S. 239, 244 (1983).  Furthermore, the framework for

analyzing claims of deliberate indifference to medical needs was clearly established when the

Supreme Court decided <u>Farmer</u>, 511 U.S. at 825.[3]  As a result, an officer should be on "fair

warning" that a deliberate indifference to medical needs would be considered a constitutional

violation.

       Thus, the only question that remains is whether reasonable officers in the Defendants'

places would have realized that their conduct violated that clearly established right.  The

Defendants here acted unreasonable because, first of all, the evidence of Plaintiff's need for

hospitalization was plain.  From the time he was brought into the station in handcuffs until he

was brought out on a stretcher, it was obvious by the Plaintiff's erratic behavior—observed by

both the officers and fellow detainees—that he needed medical attention.

       Second, O'Brien admitted to Trooper Lilly he saw Plaintiff smashing his head into the

window and acting "berserk," yet did nothing.  Inmate Gavin also said that Sylva was smashing

his head against the wall and said that the Plaintiff was handcuffed in his cell.  When combined

with the admissions by Tobin and Crowley that they knew Plaintiff was agitated, could not stop

screaming, and was banging against the walls, these facts show that reasonable officers should

have know that their failure to transport Sylva to the hospital and to use proper restraints to

prevent him from injuring himself was a constitutional violation of his right to medial care.  <u>See</u>

---

[3] <u>See</u> <u>also</u> <u>Miranda</u> v. <u>Munoz</u>, 770 F.2d 255, 259 (1st Cir. 1985) (it is clearly established that a prisoner's rights are violated where there is a lack of adequate medical care even when some care is offered).

also Garretson, 2005 U.S. App. LEXIS 7164 at *23 (no qualified immunity where officer knew

detainee was a diabetic but failed to provide insulin).

## II.    THE DEFENDANT CITY OF QUINCY IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S MUNCIPAL LIABILITY CLAIM

Municipal liability may be imposed under §1983 when the enforcement of a municipal

policy or custom was the moving force behind a violation of federally protected rights.  Bd. of

the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997).  Even if a policy is facially

constitutional, municipalities will still be liable if the policy can be shown to produce

constitutional violations.  City of Canton v. Harris, 489 U.S. 378, 385-87 (1989).  To establish

liability, courts look at whether there was a "direct causal link" between the policy and the

violation, id. at 385, or if the policy "actually caused" the violation.  Id. at 391.

In the absence of an explicit policy or an entrenched custom, "the inadequacy of police

training may serve as a basis of §1983 liability . . . where the failure to train amounts to a

deliberate indifference to the rights of persons with whom the police come into contact."  City of

Canton, 489 U.S. at 385.  This Court must examine whether "the injury [could] have been

avoided had the employee been trained under a program that was not deficient in the identified

respect."  Id. at 391.

Furthermore, deliberate indifference can be established by the failure to have any policy

at all when one could have been implemented.  See Pembaur v. Cincinnati, 475 U.S. 469, 483-84

(1986) (plurality) ("[M]unicipal liability under §1983 attaches where . . . a deliberate choice to

follow a course of action is made from among various alternatives" by city policymakers.); see

also Manarite v. City of Springfield, 957 F.2d 953, 959 (1st Cir. 1992) ("The municipal policy-

maker's failure to adopt a precaution can be the basis for §1983 liability when such omission

amounts to an intentional choice.")

The City's failure to have a policy is therefore deliberately indifferent[4] because it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights.  City of Canton, 489 U.S. at 389; see also Winton v. Board of Comm'rs, 88 F. Supp. 2d 1247, 1263 (D. Okla. 2000), citing Brown, 520 U.S. at 407-08. ("The deliberate indifference standard may be satisfied when a governmental entity has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."); Carter v. Harrison, 612 F. Supp. 749, 758 (E.D.N.Y. 1985) (failure to implement a policy for disclosure of exculpatory evidence to criminal defendants is grounds for municipal liability under §1983).

Although a single incident does not always give rise to liability, Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985), "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action."  Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1999) (internal citations and quotations omitted).

In the case at bar, the City is liable because it failed to implement a policy for dealing with arrestees who are in need of immediate medical care and failed to train its officers on how to handle arrestees who behave as the Plaintiff did on the night in question.  The mere fact that no similar constitutional violations occurred in the past, whether true or not, does not preclude the municipal liability claim from going forward to trial.

In Brown v. Bryan County, 219 F.3d 450, 452 (5th Cir. 2000), the court reviewed a plaintiff's verdict awarding damages for a municipality's failure to train an officer who

---

[4]Proving deliberate indifference by the City is less-taxing then showing a deliberate indifference to medical needs by the individual Defendant officers.  Municipal liability can be satisfied if the municipality has "constructive notice" that its actions will result in harm, whereas, for individual officers, actual notice is required.  Brown, 520 U.S. at 407-08.

subsequently used excessive force. The court there found that even though the failure to train was an isolated incident, the city was liable for its deliberate indifference: "the need to train [the defendant was obvious] so as to make his failure to require training a conscious decision." Id. at 458. The court further cited with approval the decision in City of Canton: "that, under certain circumstances, §1983 liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." Id. at 459.

Thus, even if no prior incident involving an out-of-control schizophrenic in need of medical care ever arose in the Quincy Police Department, the City is still liable in this case because it should have created a policy to deal with mentally unstable detainees, and should have trained its officers on that policy.[5] First, the City should have implemented a policy with regards to incarcerating detainees who are mentally unstable. Crowley testified that there are no procedures to instruct officers when a detainee should be handcuffed to a bar in the holding cell or to a restraining chair for his own protection. See Plaintiff's Stmnt. of Mat. Facts at 39. Yet because of the Plaintiff's mental state, and because he was handcuffed (though not to any retraint), Sylva was especially vulnerable to injury in the manner that, in fact, ended up causing his death.

Second, the City should have trained its officers on its policy for hospitalization of mentally unstable detainees when incarceration poses threats to the detainees own safety. Although the City has a general policy of notifying a hospital if a prisoner needs immediate psychiatric care, see Plaintiff's Stmnt. of Mat. Facts at 22, the Defendant officers were clearly not aware of exactly when that need for care becomes immediate. The officers observed Sylva

---

[5] In fact, the City of Quincy was aware of the danger of placing unstable detainees in cells while handcuffed. In 1994, a detainee named Timothy Carroll, who was intoxicated, was seriously and permanently injured in a Quincy Police jail when he was unable to break his fall because he was handcuffed. See Plaintiff's Stmnt. of Mat. Facts at 44.

in an agitated state, knew he was behaving abnormally in his cell, and knew he was throwing himself from one side of the cell to the other, yet chose not to seek medical attention. Such a decision clearly reflects a lack of training on the part of the City, and thus summary judgment is inappropriate. See also Olsen v. Layton Hills Mall, 312 F.3d 1304, 1319 (10th Cir. 2002) (municipality liable for failure to train officers on how to handle detainees with Obsessive Compulsive Disorder despite obvious need).

## III.    THE DEFENDANT OFFICERS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON THE MASSACHUSETTS CIVIL RIGHTS ACT CLAIM

The Supreme Judicial Court has stated that the Massachusetts Civil Rights Act "MCRA" and §1983 are parallel statutes, coextensive with each other. See Batchelder v. Allied Stores Corp., 393 Mass. 819, 822-23 (1985); Canney v. Chelsear, 925 F. Supp 58, 68 (1st Cir. 1996). Accordingly, the arguments in Sections I and II, supra, with respect to Plaintiff's claims brought pursuant to §1983, apply with equal force to Plaintiff's claims pursuant to the MCRA. Therefore, should the court find that Plaintiff has presented sufficient evidence of his federal claims, summary judgment is certainly not appropriate on his claims brought under the MCRA.

## IV.    THE PLAINTIFF PROPERLY PRESENTED HIS NEGLIGENCE CLAIM

The Plaintiff died on December 17, 2000. His estate properly presented his negligence claims to the City of Quincy, pursuant to M.G.L. ch. 258, on December 12, 2002. The return of service, stating that the letter had been delivered to the Mayor of Quincy, was dated December 13, 2002. See Plaintiff's Stmnt. of Mat. Facts at 45.

## CONCLUSION

Wherefore, the Plaintiff respectfully requests that this Court deny the Defendant's motion for summary judgment.

Respectfully Submitted,
The Plaintiff Charles Sylva
By his attorneys

DATED: May 31, 2005

_____
Stephen B. Hrones (BBO No. 242860)
Jessica D Hedges (BBO No. 645847)
HRONES, GARRITY & HEDGES
Lewis Wharf–Bay 232
Boston, MA 02110-3927
T) 617/227-4019

### CERTIFICATE OF SERVICE

    I, Jessica D Hedges, hereby certify that on this 31st day of May, 2005, I served one true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, where unable to do so electronically, by United States First-Class Mail, postage prepaid, as follows:  Douglas I Louison, Esq., James W Simpson, Jr., Esq., MERRICK LOUISON & COSTELLO, 67 Batterymarch St, Boston, MA 02110.

//S//Jessica D Hedges
Jessica D Hedges