UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SYLVA, Administrator of the Estate of CHARLES SYLVA,<br>　　　Plaintiff,<br><br>v.<br><br>THE CITY OF QUINCY, MICHAEL O'BRIEN, GERRY NICHOLS, JAMES BORDEN, KEVIN TOBIN, ROBERT CROWLEY, and JOHN KELLEY,<br>　　　Defendants. | C.A. NO. 03-12473-REK |

**PLAINTIFF SYLVA'S MOTION TO RECONSIDER
AND INCORPORATED MEMORANDUM OF LAW**

Now comes the Plaintiff, John Sylva, and hereby moves this Court to reconsider its granting of summary judgment to the Defendant City of Quincy on its violation of 42 U.S.C. §1983. As grounds therefore, the Plaintiff submits the following memorandum of law:

**I.　THE CITY OF QUINCY WAS DELIBERATELY INDIFFERENT BECAUSE IT FAILED TO HAVE POLICIES CONCERNING THE USE OF HANDCUFFS AND ALTERNATIVE METHODS OF RESTRAINT**

**A. The failure to have policies on the use of alternative methods of restraint caused a violation of the plaintiff's constitutional rights**

This Court found that the City was not liable for its failure to have "regulations relating to the use of the bar, the chair or the bench." See Report and Recommendation at 22. Even though the Court found that "no defendants suggested an alternative method of restraint, perhaps because defendants were unaware of its existence," it determined that the mere existence of the bench, bar and chair showed the City was not deliberately indifferent. Id. This conclusion, respectfully, was incorrect.

1

The bench, bar and chair were installed to prevent unstable detainees from injuring themselves after Timothy Carroll, who was heavily intoxicated, sustained serious injuries in this same Quincy jail because he was handcuffed behind his back and was unable to break his fall. See Plaintiff's Stmnt. of Mat. Facts at 44.  Nevertheless, despite being put on notice of the necessity for alternative methods of restraint, the City never provided any guidance, instruction or policy on how or when to use these methods.  In fact, Crowley testified in his deposition that there are no procedures to instruct officers when a detainee should be handcuffed to the bar in the holding cell, the bench or the restraining chair for his own protection.  See Plaintiff's Stmnt. of Mat. Facts at 39.  Equipment, a jury might conclude, is useless without some guidelines or training on when and how to use it.  In fact, Plaintiff would argue at trial that much of the equipment given to officers which is designed to ensure safety (e.g., handcuffs) actually becomes more dangerous without guidelines and training for those devices.[1]  As such, the City's failure to provide officers with a policy and procedure or other form of guidance governing the use of this equipment was deliberately indifferent to the safety and medical needs of the Plaintiff, as guaranteed by the Fourteenth Amendment.

**B. The failure to have a policy on handcuffing unstable detainees caused a violation of the plaintiff's constitutional rights**

The City was also deliberately indifferent to the Plaintiff because it failed to have policies or procedures with regards to handcuffing detainees who are mentally unstable.  Tobin stated in his deposition that there are no policies, written or unwritten, for when unstable detainees should be handcuffed.  The decision on whether to handcuff an unstable detainee is left completely within the discretion of the individual officer.  Id. at 13.

---

[1] The City's failure to have regulations for the bench, bar or chair is analogous to the City providing a defibrillator for officers to give CPR without providing any policies or training on how and when to use it.

Both Tobin and Crowley acknowledged that leaving handcuffs on unstable detainees is a risk to that detainees' safety. Id. at 13, 14. Indeed because of the Plaintiff's mental state, and because he was handcuffed (though not to any restraint), Sylva was especially vulnerable to injury in the manner that, in fact, ended up causing his death. Although the Defendant denies Sylva was handcuffed, a witness told the investigating officer that he was and this Court seemingly accepted this fact as true when Id. at 15. A dispute of fact exists, therefore, as to whether the Defendant City was deliberately indifferent because it failed to have a policy for when and how to handcuff unstable detainees.

This Court found that the City was not liable for its failure to have a policy on handcuffing because the individual officers testified that "detainees who are combative or dangerous to themselves should remain handcuffed, otherwise prison officials usually remove handcuffs when an inmate is placed in cell," and because the City "implemented other methods of detention." See Report and Recommendation at 23. However, the fact that the officers could articulate their own personal standards for when to handcuff, standards which failed the Plaintiff on the night in question, does not relieve that City from its burden of having policies that protect the constitutional rights of those in its custody. Moreover, the fact that the City had the bench, chair and bar it its physical possession does not equate to implementation of proper procedures for the use of those devices. A properly implemented policy for alternative methods of restraint would have prevented the Plaintiff from bouncing off walls, falling down, and, ultimately, his death.

**II.   THE CITY OF QUINCY WAS DELIBERATELY INDIFFERENT BECAUSE ITS POLICY FOR HOSPITALIZING THOSE IN NEED OF MEDICAL CARE WAS TOO GENERAL AND ITS OFFICERS WERE NOT TRAINED TO FOLLOW IT**

The City was deliberately indifferent because it should have trained its officers on its policy for hospitalization of mentally unstable detainees when incarceration poses threats to the detainees safety.  Although the City has a general policy of notifying a hospital if a prisoner needs immediate psychiatric care, see Plaintiff's Stmnt. of Mat. Facts at 22, the Defendant officers were clearly not aware of exactly when that need for care becomes immediate.  The officers observed Sylva in an agitated state, knew he was behaving abnormally in his cell, and knew he was throwing himself from one side of the cell to the other, yet chose not to seek medical attention.  Such a decision clearly reflects a lack of training on the part of the City, and thus summary judgment is inappropriate.  See Olsen v. Layton Hills Mall, 312 F.3d 1304, 1319 (10th Cir. 2002) (municipality liable for failure to train officers on how to handle detainees with Obsessive Compulsive Disorder).

This Court held that the City was not liable for its officers' failure to hospitalize the Plaintiff because the City had a "policy" that dealt with the providing of medical care to mentally unstable inmates.  See Report and Recommendation at 22.  The Court found that the officers' failure to abide by that policy was probative of their individual liability, not of the City's.  Id.  Yet for all intents and purposes, a demonstrated practice of ignoring a policy is the same as having no policy in place in the first place.  See Woodward v. Corr. Med. Servs. of Ill., Inc., 368 F.3d 917, 929 (7th Cir. 2004).  Moreover, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action.  Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1999).

4

Thus, even if no prior incident involving a schizophrenic in need of medical care ever arose in the Quincy Police Department, the City is still liable in this case because it should have implemented a clear and effective policy on when to hospitalize unstable detainees and should have trained its officers on that policy.  As such, and given that this Court found that several officers ignored written policy, a trial worthy issue exists as to whether the City violated the Plaintiff's constitutional rights.

|  |  |
|---|---|
|  | Respectfully Submitted,<br>The Plaintiff John Sylva,<br>Administrator of the Estate of Charles Sylva<br>By his attorneys |
| DATED: August 8, 2005 | //S//Jessica D. Hedges<br>Stephen B. Hrones (BBO No. 242860)<br>Jessica D Hedges (BBO No. 645847)<br>HRONES, GARRITY & HEDGES<br>Lewis Wharf–Bay 232<br>Boston, MA 02110-3927<br>T) 617/227-4019 |

**CERTIFICATE OF SERVICE**

I, Jessica D Hedges, hereby certify that on this 8th day of August, 2005, I served one true and correct copy of the foregoing PLAINTIFF SYLVA'S MOTION TO RECONSIDER AND INCORPORATED MEMORANDUM OF LAW, where unable to do so electronically, by United States First-Class Mail, postage prepaid, as follows:  Douglas I Louison, Esq., James W Simpson, Jr., Esq., MERRICK LOUISON & COSTELLO, 67 Batterymarch St, Boston, MA 02110.

//S//Jessica D Hedges
Jessica D Hedges