UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN SYLVA, Administrator of
the Estate of CHARLES SYLVA,
    Plaintiff,

                                    CIVIL ACTION NO.
    v.                            03-12473-MBB

CITY OF QUINCY, MICHAEL O'BRIEN,
GERRY NICHOL and KEVIN TOBIN,
    Defendants.


**DRAFT RE:**
**<u>COURT'S INSTRUCTIONS TO THE JURY</u>**

**June 25, 2006**


**MEMBERS OF THE JURY:**

NOW THAT YOU HAVE HEARD ALL THE EVIDENCE AND THE ARGUMENTS OF COUNSEL, IT BECOMES MY DUTY TO GIVE THE INSTRUCTIONS OF THE COURT CONCERNING THE LAW APPLICABLE TO THIS CASE.

IT IS YOUR DUTY AS JURORS TO FOLLOW THE LAW AS I SHALL STATE IT TO YOU, AND TO APPLY THAT LAW TO THE FACTS AS YOU FIND THEM FROM THE EVIDENCE IN THE CASE. YOU ARE NOT TO SINGLE OUT ONE INSTRUCTION ALONE AS STATING THE LAW, BUT MUST CONSIDER THE INSTRUCTIONS AS A WHOLE. NEITHER ARE YOU TO BE CONCERNED WITH THE WISDOM OF ANY LAW STATED BY THE COURT.

REGARDLESS OF ANY OPINION YOU MAY HAVE AS TO WHAT THE LAW IS OR OUGHT TO BE, IT WOULD BE A VIOLATION OF YOUR SWORN DUTY TO

BASE A VERDICT ON ANY VIEW OF THE LAW OTHER THAN THAT GIVEN IN THE INSTRUCTIONS OF THE COURT, JUST AS IT WOULD ALSO BE A VIOLATION OF YOUR SWORN DUTY, AS JUDGES OF THE FACTS, TO BASE A VERDICT ON ANYTHING OTHER THAN THE EVIDENCE IN THIS CASE.

IN DECIDING THE FACTS OF THIS CASE, YOU MUST NOT BE SWAYED BY BIAS OR PREJUDICE OR FAVOR AS TO ANY PARTY.  OUR SYSTEM OF LAW DOES NOT PERMIT JURORS TO BE GOVERNED BY PREJUDICE OR SYMPATHY OR PUBLIC OPINION.  BOTH THE PARTIES AND THE PUBLIC EXPECT THAT YOU WILL CAREFULLY AND IMPARTIALLY CONSIDER ALL OF THE EVIDENCE IN THE CASE, FOLLOW THE LAW AS STATED BY THE COURT, AND REACH A JUST VERDICT REGARDLESS OF THE CONSEQUENCES.

## MUNICIPAL PARTY

THIS CASE SHOULD BE CONSIDERED AND DECIDED BY YOU AS AN ACTION BETWEEN PERSONS OF EQUAL STANDING IN THE COMMUNITY, AND HOLDING THE SAME OR SIMILAR STATIONS IN LIFE.  A MUNICIPAL ENTITY SUCH AS A CITY IS ENTITLED TO THE SAME FAIR TRIAL AT YOUR HANDS AS IS A PRIVATE INDIVIDUAL.  ALL PERSONS, INCLUDING MUNICIPALITIES, STAND EQUAL BEFORE THE LAW AND ARE TO BE DEALT WITH AS EQUALS IN A COURT OF JUSTICE.

WHEN A MUNICIPALITY SUCH AS THE TOWN OF QUINCY IS INVOLVED, HOWEVER, IT MAY ACT ONLY THROUGH NATURAL PERSONS SUCH AS ITS CITY OFFICERS OR EMPLOYEES.  ANY OFFICER OR EMPLOYEE OF A CITY MAY BIND THE CITY BY HIS OR HER ACTS AND DECLARATIONS MADE WHILE ACTING WITHIN THE SCOPE OF HIS OFFICE OR EMPLOYMENT.[1]  IN GENERAL, THE DETERMINATION DEPENDS UPON THE ABILITY OF THE MUNICIPALITY, WHICH IN THIS CASE IS THE CITY OF QUINCY, TO CONTROL THE OFFICER OR EMPLOYEE.  THE CONDUCT OF AN OFFICER OR EMPLOYEE OF A MUNICIPALITY IS UNDER THE MUNICIPALITY'S CONTROL WHEN IT IS THE KIND OF CONDUCT THAT THE OFFICER OR EMPLOYEE IS EMPLOYED TO PERFORM, THE CONDUCT HAPPENS SUBSTANTIALLY DURING THE TIME AND SPACE OF THE EMPLOYMENT AND THE CONDUCT IS ACTUATED, AT LEAST IN PART, BY A DESIRE OR PURPOSE OF THE OFFICER OR EMPLOYEE TO SERVE THE MUNICIPALITY.

---

[1]    Mass. Gen. L. ch. 258, § 2.

## CONSIDERATION OF THE EVIDENCE

AS STATED EARLIER, IT IS YOUR DUTY TO DETERMINE THE FACTS, AND IN SO DOING YOU MUST CONSIDER ONLY THE EVIDENCE I HAVE ADMITTED IN THE CASE.  THE TERM "EVIDENCE" INCLUDES THE SWORN TESTIMONY OF THE WITNESSES AND THE EXHIBITS ADMITTED INTO THE RECORD.  I WILL PROVIDE YOU WITH ALL OF THE EXHIBITS THAT WERE ADMITTED INTO THE RECORD FOR YOU TO REVIEW DURING YOUR DELIBERATIONS.

REMEMBER THAT ANY STATEMENTS, OBJECTIONS OR ARGUMENTS MADE BY THE LAWYERS ARE NOT EVIDENCE IN THE CASE.  THE FUNCTION OF THE LAWYERS IS TO POINT OUT THOSE THINGS THAT ARE MOST SIGNIFICANT OR MOST HELPFUL TO THEIR SIDE OF THE CASE, AND IN SO DOING, TO CALL YOUR ATTENTION TO CERTAIN FACTS OR INFERENCES THAT MIGHT OTHERWISE ESCAPE YOUR NOTICE.

YOU MUST NOT CONSIDER THE LAWYERS TO HAVE BEHAVED IMPROPERLY BECAUSE HE HAS ASSERTED OBJECTIONS.  IT IS THEIR JOB TO DO SO. NOR MAY YOU SPECULATE AS TO WHAT EVIDENCE THERE MAY BE WHICH WAS, FOR ONE REASON OR ANOTHER, NOT INTRODUCED.  IF THE EVIDENCE HAS BEEN EXCLUDED, IT IS BECAUSE THERE HAS BEEN GOOD REASON TO EXCLUDE IT, AND YOU SHOULD NOT SPEND TIME SPECULATING ABOUT WHAT THE EVIDENCE MIGHT HAVE BEEN.

WHAT THE LAWYERS SAY IS NOT BINDING UPON YOU.  IN THE FINAL ANALYSIS, IT IS YOUR RECOLLECTION AND INTERPRETATION OF THE

EVIDENCE THAT CONTROLS IN THE CASE.

SO, WHILE YOU SHOULD CONSIDER ONLY THE EVIDENCE IN THE CASE, YOU ARE PERMITTED TO DRAW SUCH REASONABLE INFERENCES FROM THE TESTIMONY AND EXHIBITS AS YOU FEEL ARE JUSTIFIED IN LIGHT OF COMMON EXPERIENCE.  IN OTHER WORDS, YOU MAY MAKE DEDUCTIONS AND REACH CONCLUSIONS WHICH REASON AND COMMON SENSE LEAD YOU TO DRAW FROM THE FACTS WHICH HAVE BEEN ESTABLISHED BY THE TESTIMONY AND OTHER EVIDENCE IN THE CASE.  IT IS FOR YOU ALONE TO DECIDE THE WEIGHT, IF ANY, TO GIVE TO THE TESTIMONY YOU HAVE HEARD AND THE EXHIBITS YOU HAVE SEEN.

## <u>DIRECT AND CIRCUMSTANTIAL EVIDENCE</u>

THERE ARE, GENERALLY SPEAKING, TWO TYPES OF EVIDENCE FROM WHICH A JURY MAY PROPERLY FIND THE TRUTH AS TO THE FACTS OF A CASE.  ONE IS DIRECT EVIDENCE -- SUCH AS THE TESTIMONY OF AN EYEWITNESS.  THE OTHER IS INDIRECT OR CIRCUMSTANTIAL EVIDENCE -- THE PROOF OF A CHAIN OF CIRCUMSTANCES POINTING TO THE EXISTENCE OR NONEXISTENCE OF CERTAIN FACTS.

A FACT MAY BE ESTABLISHED BY DIRECT EVIDENCE OR CIRCUMSTANTIAL EVIDENCE OR BOTH.  A FACT IS ESTABLISHED BY DIRECT EVIDENCE WHEN PROVED BY DOCUMENTARY EVIDENCE OR BY WITNESSES WHO SAW THE ACTS DONE OR HEARD THE WORDS SPOKEN.  A FACT IS ESTABLISHED BY CIRCUMSTANTIAL EVIDENCE WHEN THE FACT CAN BE FAIRLY AND REASONABLY INFERRED FROM OTHER FACTS.

I WILL NOW GIVE YOU AN EXAMPLE OF CIRCUMSTANTIAL EVIDENCE AND AN EXAMPLE OF DIRECT EVIDENCE.  IF YOU HAVE THE NEWSPAPER DELIVERED TO YOUR HOUSE EVERY MORNING AND IF, AT THE TIME YOU GO TO BED, THERE IS FRESH SNOW ON THE GROUND AND NO FOOTPRINTS IN THE SNOW AND, IN THE MORNING, IF YOU LOOK OUT THE WINDOW AND CAN SEE FOOTPRINTS IN THE SNOW AND SEE THE NEWSPAPER ON THE STEP, THEN YOU CAN INFER THAT THE NEWSPAPER DELIVERY PERSON HAS BEEN THERE.  THIS INFERENCE IS MADE ON THE BASIS OF CIRCUMSTANTIAL EVIDENCE.  AN EXAMPLE OF DIRECT EVIDENCE WOULD BE IF YOU PERSONALLY SAW THE NEWSPAPER PERSON MAKING THE DELIVERY.

AS A GENERAL RULE, THE LAW MAKES NO DISTINCTION BETWEEN DIRECT AND CIRCUMSTANTIAL EVIDENCE, BUT SIMPLY REQUIRES THAT A JURY FIND THE FACTS IN ACCORDANCE WITH THE PREPONDERANCE OF ALL OF THE EVIDENCE IN THE CASE, BOTH DIRECT AND CIRCUMSTANTIAL.

## CREDIBILITY OF WITNESSES

NOW, I HAVE SAID THAT YOU MUST CONSIDER ALL OF THE EVIDENCE. THIS DOES NOT MEAN, HOWEVER, THAT YOU MUST ACCEPT ALL OF THE EVIDENCE AS TRUE OR ACCURATE.

YOU ARE THE SOLE JUDGES OF THE CREDIBILITY OR "BELIEVABILITY" OF EACH WITNESS AND THE WEIGHT TO BE GIVEN TO HIS OR HER TESTIMONY.  IN WEIGHING THE TESTIMONY OF A WITNESS, YOU SHOULD CONSIDER HIS OR HER RELATIONSHIP TO THE PLAINTIFF OR TO THE DEFENDANTS; HIS OR HER INTEREST, IF ANY, IN THE OUTCOME OF THE CASE; HIS OR HER MANNER OF TESTIFYING; HIS OR HER OPPORTUNITY TO OBSERVE OR ACQUIRE KNOWLEDGE CONCERNING THE FACTORS ABOUT WHICH HE OR SHE TESTIFIED; HIS OR HER CANDOR, FAIRNESS AND INTELLIGENCE; AND THE EXTENT TO WHICH HIS OR HER TESTIMONY HAS BEEN SUPPORTED OR CONTRADICTED BY OTHER CREDIBLE EVIDENCE.  YOU MAY ALSO CONSIDER HOW THE WITNESS BEHAVED WHILE TESTIFYING.  WITH REGARD TO HIS OR HER MANNER OF TESTIFYING, YOU SHOULD ASK YOURSELF IF THE WITNESS SEEMED BELIEVABLE.  THE FACT THAT A WITNESS IS A STATE TROOPER OR A POLICE OFFICER, HOWEVER, SHOULD NOT BE GIVEN ANY GREATER CREDIBILITY THAN THAT OF ANY OTHER WITNESS, NOR SHOULD IT BE GIVEN ANY LESS CREDIBILITY.[2]  IN SHORT,

---

[2]  Cummings v. Artuz, 237 F.Supp.2d 475, 481 (S.D.N.Y. 2002) (characterizing as "standard" the instruction given by trial court "that the testimony of a police officer should not be given any greater credibility than that of any other witness, nor should it be given any less credibility").

8

YOU MAY ACCEPT OR REJECT THE TESTIMONY OF ANY WITNESS IN WHOLE OR IN PART.

ALSO, THE WEIGHT OF THE EVIDENCE IS NOT NECESSARILY DETERMINED BY THE NUMBER OF WITNESSES AS TO THE EXISTENCE OR NONEXISTENCE OF ANY FACT.  YOU MAY FIND THAT THE TESTIMONY OF A SMALLER NUMBER OF WITNESSES AS TO ANY FACT IS MORE CREDIBLE THAN THE TESTIMONY OF A LARGER NUMBER OF WITNESSES TO THE CONTRARY.

YOU HAVE HEARD EVIDENCE OF DISCREPANCIES IN THE TESTIMONY OF CERTAIN WITNESSES, AND COUNSEL MAY HAVE ARGUED THAT SUCH DISCREPANCIES ALONE ARE REASON FOR YOU TO REJECT THE TESTIMONY OF THOSE WITNESSES.  YOU ARE INSTRUCTED THAT EVIDENCE OF DISCREPANCIES MAY BE A BASIS TO DISBELIEVE A WITNESS' TESTIMONY BUT SUCH DISCREPANCIES DO NOT NECESSARILY MEAN THAT THE WITNESS' ENTIRE TESTIMONY SHOULD BE DISCREDITED.

PEOPLE SOMETIMES FORGET THINGS WITH TIME.  A TRUTHFUL WITNESS MAY BE NERVOUS AND CONTRADICT HIMSELF.  IT IS ALSO A FACT THAT TWO PEOPLE WITNESSING THE SAME EVENT MAY SEE OR HEAR IT DIFFERENTLY.  WHETHER A DISCREPANCY PERTAINS TO A FACT OF IMPORTANCE OR ONLY TO A TRIVIAL DETAIL SHOULD BE CONSIDERED AND WEIGHED AS TO ITS SIGNIFICANCE; BUT A VERIFIED FALSEHOOD ALWAYS IS A MATTER OF IMPORTANCE AND SHOULD BE CONSIDERED SERIOUSLY.

IT IS FOR YOU TO DECIDE, BASED ON YOUR IMPRESSION OF THE WITNESS, HOW TO WEIGH THE DISCREPANCY IN A WITNESS' TESTIMONY.

AS ALWAYS, I ADVISE YOU TO USE YOUR COMMON SENSE AND YOUR OWN JUDGMENT.

IF ANY WITNESS IS SHOWN TO HAVE WILLFULLY LIED ON THE WITNESS STAND ABOUT ANY MATERIAL MATTER, YOU HAVE THE RIGHT TO CONCLUDE THAT HE OR SHE HAS ALSO LIED ABOUT OTHER MATTERS.  YOU MAY ACCEPT WHATEVER PART YOU MAY THINK DESERVES TO BE BELIEVED.

IT IS UP TO YOU TO DETERMINE WHETHER THE WITNESS TESTIFIED FALSELY AND WHETHER HE OR SHE DID SO DELIBERATELY.  IT IS ENTIRELY UP TO YOU TO DECIDE WHAT WEIGHT IF ANY SHOULD BE GIVEN TO THE TESTIMONY OF SUCH A WITNESS ON THE BASIS OF ALL THE EVIDENCE AND YOUR COMMON SENSE.

## EXPERT WITNESSES

THE RULES OF EVIDENCE ORDINARILY DO NOT PERMIT WITNESSES TO TESTIFY AS TO OPINIONS OR CONCLUSIONS, AND THE LAW ORDINARILY DOES NOT PERMIT YOU, THE JURY, TO CONSIDER THE OPINIONS OR CONCLUSIONS OF WITNESSES IN YOUR DELIBERATIONS. AN EXCEPTION TO THIS RULE EXISTS AS TO THOSE WHOM WE CALL EXPERT WITNESSES - WITNESSES WHO BY EDUCATION AND EXPERIENCE, HAVE BECOME EXPERT IN SOME ART, SCIENCE, PROFESSION OR CALLING. THEY MAY STATE THEIR OPINIONS AS TO THOSE RELEVANT AND MATERIAL MATTERS IN WHICH THEY PROFESS TO BE AN EXPERT AND THEY MAY ALSO STATE THE REASONS FOR THEIR OPINIONS.

YOU SHOULD CONSIDER EACH EXPERT OPINION IN EVIDENCE IN THIS CASE AND ACCORD IT SUCH WEIGHT AS YOU MAY THINK IT DESERVES WITHOUT ABANDONING YOUR COMMON SENSE. IF YOU SHOULD DECIDE THAT THE OPINION OF THE EXPERT WITNESS IS EITHER NOT BASED ON SUFFICIENT EDUCATION AND EXPERIENCE, OR IF YOU SHOULD CONCLUDE THAT THE REASONS GIVEN IN SUPPORT OF THE OPINION ARE NOT SOUND, OR THAT THE OPINION IS OUTWEIGHED BY OTHER EVIDENCE, THEN YOU MAY DISREGARD THE OPINION ENTIRELY, OR GIVE IT SUCH REDUCED IMPORTANCE AS YOU THINK APPROPRIATE.

## IMPEACHMENT

A WITNESS MAY BE DISCREDITED OR "IMPEACHED" BY CONTRADICTORY EVIDENCE, BY A SHOWING THAT HE OR SHE TESTIFIED FALSELY CONCERNING A MATERIAL MATTER, OR BY EVIDENCE THAT AT SOME OTHER TIME THE WITNESS HAS SAID OR DONE SOMETHING, OR HAS FAILED TO SAY OR DO SOMETHING, WHICH IS INCONSISTENT WITH THE WITNESS' PRESENT TESTIMONY.

IN DECIDING WHETHER TO BELIEVE A WITNESS, YOU SHOULD SPECIFICALLY NOTE ANY EVIDENCE OF HOSTILITY OR AFFECTION WHICH THE WITNESS MAY HAVE TOWARDS ONE OF THE PARTIES.  LIKEWISE, YOU SHOULD CONSIDER EVIDENCE OF ANY OTHER INTEREST OR MOTIVE THAT THE WITNESS MAY HAVE IN COOPERATING WITH A PARTICULAR PARTY.

IT IS YOUR DUTY TO CONSIDER WHETHER THE WITNESS HAS PERMITTED ANY SUCH BIAS OR INTEREST TO COLOR HIS OR HER TESTIMONY.  IN SHORT, IF YOU FIND THAT A WITNESS IS BIASED, YOU SHOULD VIEW HIS OR HER TESTIMONY WITH CAUTION, WEIGH IT WITH CARE AND SUBJECT IT TO CLOSE AND SEARCHING SCRUTINY.

IF YOU BELIEVE THAT ANY WITNESS HAS BEEN SO IMPEACHED, THEN IT IS YOUR EXCLUSIVE PROVINCE TO GIVE THE TESTIMONY OF THAT WITNESS SUCH CREDIBILITY OR WEIGHT, IF ANY, AS YOU MAY THINK IT DESERVES.

## BURDEN OF PROOF

THIS IS A CIVIL CASE AND AS SUCH THE PLAINTIFF JOHN SYLVA, THE ADMINISTRATOR OF THE ESTATE OF CHARLES SYLVA, WHO I WILL OFTEN REFER TO IN THESE INSTRUCTIONS AS THE PLAINTIFF, HAS THE BURDEN OF PROVING THE MATERIAL ALLEGATIONS OF HIS CLAIMS AGAINST DEFENDANT THE CITY OF QUINCY, WHO I WILL OFTEN REFER TO AS THE CITY, AND DEFENDANTS MICHAEL O'BRIEN, GERRY NICHOL AND KEVIN TOBIN, WHO I MAY REFER TO AS A GROUP AS THE INDIVIDUAL POLICE OFFICERS OR THE INDIVIDUAL OFFICERS.

TURNING TO THE BURDEN OF PROOF, IF, AFTER CONSIDERING ALL OF THE TESTIMONY, YOU ARE SATISFIED THAT THE PLAINTIFF HAS CARRIED HIS BURDEN OF PROOF ON EACH ESSENTIAL POINT AS TO WHICH HE HAS THE BURDEN OF PROOF, THEN YOU MUST FIND FOR THE PLAINTIFF ON THAT CLAIM. IN A CIVIL ACTION SUCH AS THIS, IT IS PROPER TO FIND THAT A PARTY HAS SUCCEEDED IN CARRYING THE BURDEN OF PROOF ON AN ISSUE OF FACT IF, AFTER CONSIDERING ALL THE EVIDENCE IN THE CASE, YOU BELIEVE THAT WHAT IS SOUGHT TO BE PROVED ON THAT ISSUE IS MORE LIKELY TRUE THAN NOT TRUE. IF, ON THE OTHER HAND, YOU FIND THE TESTIMONY OF BOTH PARTIES TO BE IN BALANCE OR EQUALLY PROBABLE, THEN THE PLAINTIFF HAS FAILED TO SUSTAIN HIS BURDEN AND YOU MUST FIND FOR THE DEFENDANTS.

THE PARTY WITH THE BURDEN OF PROOF ON ANY GIVEN ISSUE HAS THE BURDEN OF PROVING EVERY DISPUTED ELEMENT OF HIS CLAIM OR DEFENSE TO YOU BY A PREPONDERANCE OF THE EVIDENCE.

WHAT DOES A "PREPONDERANCE OF THE EVIDENCE" MEAN? A PREPONDERANCE OF THE EVIDENCE MEANS THE GREATER WEIGHT OF THE

13

EVIDENCE.  IT REFERS TO THE QUALITY AND PERSUASIVENESS OF THE
EVIDENCE, NOT TO THE NUMBER OF WITNESSES OR DOCUMENTS.  THE
TESTIMONY OF A SINGLE WITNESS WHICH PRODUCES IN YOUR MINDS BELIEF
IN THE LIKELIHOOD OF TRUTH IS SUFFICIENT FOR THE PROOF OF ANY
FACT, AND WOULD JUSTIFY A VERDICT IN ACCORDANCE WITH SUCH
TESTIMONY, EVEN THOUGH A NUMBER OF WITNESSES MAY HAVE TESTIFIED
TO THE CONTRARY IF, AFTER CONSIDERATION OF ALL OF THE EVIDENCE IN
THE CASE, YOU HOLD GREATER BELIEF IN THE ACCURACY AND HONESTY OF
THE ONE WITNESS.  IN DETERMINING WHETHER A CLAIM HAS BEEN PROVEN
BY A PREPONDERANCE OF THE EVIDENCE, YOU MAY CONSIDER THE RELEVANT
TESTIMONY OF ALL OF THE WITNESSES, REGARDLESS OF WHO MAY HAVE
CALLED THEM, AND ALL OF THE RELEVANT EXHIBITS RECEIVED IN
EVIDENCE, REGARDLESS OF WHO MAY HAVE PRODUCED THEM.

    IF YOU FIND THAT THE CREDIBLE EVIDENCE ON A GIVEN ISSUE IS
EVENLY DIVIDED BETWEEN THE PARTIES - THAT IT IS EQUALLY PROBABLE
THAT ONE SIDE IS RIGHT AS IT IS THAT THE OTHER SIDE IS RIGHT -
THEN YOU MUST DECIDE THAT ISSUE AGAINST THE PARTY HAVING THIS
BURDEN OF PROOF.  THAT IS BECAUSE THE PARTY BEARING THIS BURDEN
MUST PROVE MORE THAN SIMPLE EQUALITY OF EVIDENCE - IT MUST PROVE
THE ELEMENT AT ISSUE BY A PREPONDERANCE OF THE EVIDENCE.  IF, ON
THE OTHER HAND, AFTER CONSIDERING ALL THE EVIDENCE IN THE CASE,
YOU BELIEVE THAT WHAT IS SOUGHT TO BE PROVED ON THAT ISSUE IS
MORE LIKELY TRUE THAN NOT TRUE, YOU MUST FIND FOR THE PLAINTIFF.

## JURY INSTRUCTIONS ON SPECIFIC CLAIMS

I WILL NOW INSTRUCT YOU ON THE SPECIFIC CLAIMS WHICH THE PLAINTIFF HAS BROUGHT UNDER BOTH FEDERAL AND STATE LAW AGAINST THE DEFENDANTS.  THE FEDERAL CLAIM IS BROUGHT AGAINST THE INDIVIDUAL OFFICERS UNDER A FEDERAL CIVIL RIGHTS STATUTE COMMONLY KNOWN AS SECTION 1983, WHICH IS THE SECTION OF THE UNITED STATES CODE WHERE THE LAW IS LOCATED.  THE REMAINING CLAIM IS BROUGHT AGAINST THE CITY UNDER A STATE STATUTE KNOWN AS THE MASSACHUSETTS TORT CLAIMS ACT FOR NEGLIGENCE.

I HAVE PREPARED A SPECIAL VERDICT FORM WHICH CONTAINS A SERIES OF QUESTIONS.  YOU MAY TAKE ONE COPY OF THESE WRITTEN INSTRUCTIONS AND THE SPECIAL VERDICT FORM WITH YOU INTO THE JURY ROOM AS YOU DELIBERATE.  I WILL NOW INSTRUCT YOU ON EACH OF THE PLAINTIFF'S CLAIMS AND THE NECESSARY ELEMENTS WHICH THE PLAINTIFF MUST PROVE TO ESTABLISH THESE CLAIMS.

## FEDERAL CLAIM UNDER SECTION 1983

THE PLAINTIFF'S FIRST CLAIM IS UNDER SECTION 1983 FOR THE ALLEGED VIOLATION OF THE CONSTITUTIONAL RIGHTS OF CHARLES SYLVA. IT IS BROUGHT AGAINST THE INDIVIDUAL POLICE OFFICERS AND NOT THE CITY.  IN GENERAL, THIS CIVIL RIGHTS STATUTE PROTECTS INDIVIDUALS FROM BEING DENIED THEIR CONSTITUTIONAL RIGHTS BY STATE ACTORS AS OPPOSED TO BY PRIVATE PERSONS.  IN ORDER TO SUCCEED ON A CLAIM BROUGHT UNDER SECTION 1983, THE PLAINTIFF MUST PROVE TWO ESSENTIAL ELEMENTS BY A PREPONDERANCE OF THE EVIDENCE.

FIRST, THE PLAINTIFF MUST ESTABLISH THAT A DEFENDANT VIOLATED A CONSTITUTIONAL RIGHT OF CHARLES SYLVA'S.  SECOND, THE PLAINTIFF MUST SHOW THAT THE ACTIONS OF THAT DEFENDANT WERE TAKEN WHILE ACTING UNDER COLOR OF STATE LAW.  WITH RESPECT TO THE SECOND ELEMENT OF "ACTING UNDER COLOR OF STATE LAW," THE PARTIES DO NOT DISPUTE THAT THE INDIVIDUAL POLICE OFFICERS WERE ACTING UNDER COLOR OF STATE LAW.  ACCORDINGLY, YOU SHOULD FIND THIS ELEMENT TO HAVE BEEN ESTABLISHED.

INSTEAD, IT IS THE FIRST ELEMENT OF A SECTION 1983 CLAIM THAT THE PARTIES DISPUTE AND TO WHICH I NOW TURN.  UNDER THE FIRST ELEMENT, THE PLAINTIFF, AS THE ADMINISTRATOR OF THE ESTATE OF CHARLES SYLVA, IS ENTITLED TO ASSERT AND IS ASSERTING THE CONSTITUTIONAL RIGHT OF CHARLES SYLVA AS A PRETRIAL DETAINEE UNDER THE SUBSTANTIVE, AS OPPOSED TO THE PROCEDURAL, COMPONENT OF

16

THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT.

WHERE, AS HERE, HOWEVER, THE PLAINTIFF IS CLAIMING THE DENIAL OF MEDICAL ASSISTANCE OR PROTECTION IN PRISON AS A PRETRIAL DETAINEE YOU SHOULD EXAMINE THE CLAIM UNDER THE EIGHTH AMENDMENT.  THE DUE PROCESS CLAUSE PROTECTIONS AFFORDED TO A PRETRIAL DETAINEE ARE THE SAME[3] OR AT LEAST AS GREAT AS THE EIGHTH AMENDMENT PROTECTION AGAINST CRUEL AND UNUSUAL PUNISHMENT AFFORDED A CONVICTED PRISONER.[4]

AN EIGHTH AMENDMENT CLAIM BY A PRETRIAL DETAINEE ALLEGING A NEED FOR PHYSICAL PROTECTION FROM HIMSELF OR MEDICAL CARE ESSENTIALLY TURNS UPON WHETHER THE CHALLENGED ACTION BY OFFICERS O'BRIEN, NICHOL AND TOBIN CONSTITUTED, FIRST, "DELIBERATE INDIFFERENCE" AND, SECOND, TO A SUBSTANTIAL RISK OF A SERIOUS HARM TO CHARLES SYLVA.  I WILL INSTRUCT YOU UPON EACH OF THESE TWO REQUIRED COMPONENTS OF THE PLAINTIFF'S SECTION 1983 CLAIM TURNING FIRST TO THE SECOND REQUIREMENT OF A SUBSTANTIAL RISK OF SERIOUS HARM.

A SUBSTANTIAL RISK OF SERIOUS HARM IS EXAMINED UNDER AN OBJECTIVE STANDARD.  IN OTHER WORDS, THE DEPRIVATION THAT THE

---

[3] <u>Burrell v. Hampshire County</u>, 307 F.3d 1, 7 (1st Cir. 2002).

[4] <u>Calderon-Ortiz v. LaBoy-Alvarado</u>, 300 F.3d 60, 64 (1st Cir. 2002).

17

PLAINTIFF ALLEGES MUST BE OBJECTIVELY SUFFICIENTLY SERIOUS.[5]  A PRETRIAL DETAINEE MUST OBJECTIVELY EXHIBIT A SUBSTANTIAL RISK OF SERIOUS HARM TO HIMSELF[6] IN ORDER TO SATISFY THIS OBJECTIVE COMPONENT OF AN EIGHTH AMENDMENT VIOLATION.  UNDER THIS STANDARD, A PRISON OFFICIAL'S ACT OR FAILURE TO ACT MUST RESULT IN THE DENIAL OF THE MINIMAL CIVILIZED MEASURE OF LIFE'S NECESSITIES.[7]

IN THE CIRCUMSTANCE WHERE THE PRETRIAL DETAINEE ALLEGES A DENIAL OF MEDICAL ASSISTANCE, THIS SAME COMPONENT OF AN EIGHTH AMENDMENT VIOLATION IS SATISFIED BY ESTABLISHING AN OBJECTIVE SERIOUS MEDICAL NEED.  A MEDICAL NEED, WHICH CAN INCLUDE A MENTAL HEALTH NEED AS WELL AS A PHYSICAL NEED, IS SERIOUS IF IT IS ONE THAT HAS BEEN DIAGNOSED BY A PHYSICIAN AS MANDATING TREATMENT, OR ONE THAT IS SO OBVIOUS THAT EVEN A LAY PERSON WOULD EASILY

---

[5]  "The Farmer test for Eighth Amendment violations initially establishes two tests.  First, the deprivation alleged must be, objectively, sufficiently serious.  For a claim based on failure to prevent harm, the plaintiff must demonstrate he was incarcerated under conditions imposing a substantial risk of serious harm."  Burrell v. Hampshire County, 307 F.3d at 8 (citation omitted).

[6]  Describing the risk in the context of a suicide as "pos[ing] a risk of harm to himself."  Elliott v. Cheshire County, 940 F.2d at 10; Framer v. Brennan, 511 U.S. at 834.

[7]  "First, the deprivation alleged must be, objectively, 'sufficiently serious,' . . . a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities . . . .'"  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

RECOGNIZE THE NECESSITY FOR A DOCTOR'S ATTENTION.[8]  THE
SERIOUSNESS OF A PRETRIAL DETAINEE'S MEDICAL NEEDS MAY ALSO BE
EXAMINED WITH REFERENCE TO THE EFFECT OF THE DELAY OF TREATMENT.[9]
TO PROVIDE YOU AN EXAMPLE, VISIBLE BRUISES AFTER A BEATING THAT
REQUIRE A SLING OR A FRACTURE ARE NOT NECESSARILY SUFFICIENTLY
SERIOUS TO DEMAND IMMEDIATE TREATMENT SUCH THAT A TEN HOUR DELAY
IN RECEIVING SUCH TREATMENT WOULD HAVE CAUSED THE PLAINTIFF
HARM.[10]  FINALLY, YOU SHOULD ALSO RECOGNIZE THAT A SERIOUS
MEDICAL NEED IS NOT LIMITED TO A SERIOUS PHYSICAL MEDICAL NEED
BUT ALSO ENCOMPASSES AN INMATE'S SERIOUS MENTAL HEALTH NEEDS[11] OR

---

[8]   Gaudreault v. Municipality of Salem, Massachusetts, 923
F.2d 203, 208 (1st Cir. 1990); accord Mahan v. Plymouth County
House of Corrections, 64 F.3d at 18 ("A 'serious medical need' is
one 'that has been diagnosed by a physician as mandating
treatment, or one that is so obvious that even a lay person would
easily recognize the necessity for a doctor's attention'").

[9]   Gaudreault v. Municipality of Salem, Massachusetts, 923
F.2d at 208 (failure to provide medical treatment for ten hours
period after beating in booking room); see Plaintiff's Proposed
Instructions (Docket Entry # 52, No. 9; requesting instruction
about delay and citing Gaudreault).

[10]   Id.

[11]   As explained by the court in Kosilek v. Maloney, 221
F.Supp.2d 156, 180 (D.Mass. 2002):

     "There is no underlying distinction between the right to
     medical care for physical ills and its psychological or
     psychiatric counterpart." Torraco v. Maloney, 923 F.2d 231,
     234 (1st Cir. 1991) (internal quotations and citations
     omitted).  Thus, "deliberate indifference to an inmate's
     serious mental health needs violates the [E]ighth
     [A]mendment."

SERIOUS PSYCHOLOGICAL NEEDS.[12]

NOW, TURNING TO THE "DELIBERATE INDIFFERENCE" COMPONENT OF AN EIGHTH AMENDMENT VIOLATION, THIS IS A SUBJECTIVE STANDARD.  IT IS A STATE OF MIND REQUIREMENT WHEREIN YOU SHOULD EXAMINE AND DETERMINE THE SUBJECTIVE BELIEFS OF DEFENDANTS O'BRIEN, NICHOL AND TOBIN.  A PRISON OFFICIAL MUST HAVE A SUFFICIENTLY SUBJECTIVE CULPABLE STATE OF MIND IN ORDER TO BE FOUND LIABLE UNDER THIS COMPONENT.[13]  AS I PREVIOUSLY INDICATED, THAT STATE OF MIND IS WHAT THE LAW CALLS ONE OF DELIBERATE INDIFFERENCE TO THE PRETRIAL DETAINEE'S HEALTH AND SAFETY.

THE "DELIBERATE INDIFFERENCE" COMPONENT ITSELF HAS SEVERAL SUBPARTS.[14]  THE "DELIBERATE" SUBPART OF DELIBERATE INDIFFERENCE REQUIRES YOU TO FIND THAT THE INDIVIDUAL OFFICERS SUBJECTIVELY WERE AWARE OF FACTS FROM WHICH THE INFERENCE COULD BE DRAWN THAT A SUBSTANTIAL RISK OF SERIOUS HARM EXISTS AND, SECONDLY, THEY

---

[12]  See Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 559 (1st Cir. 1988).

[13]  As stated in Farmer:

To violate the Cruel and Unusual Punishments Clause, a prison official must have a "sufficiently culpable state of mind."  In prison-conditions cases that state of mind is one of "deliberate indifference" to inmate health or safety.

Farmer, 511 U.S. at 834.

[14]  Burrell, 307 F.3d at 8 (second prong of Farmer "test has subparts in turn").

20

MUST DRAW THE INFERENCE.[15]  YOU MUST FIND THAT THE INDIVIDUAL

OFFICERS HAD AN ACTUAL, SUBJECTIVE APPRECIATION OF THE

SUBSTANTIAL RISK OF SERIOUS HARM POSED TO CHARLES SYLVA.[16]  THE

FOCUS IS UPON WHAT THE INDIVIDUAL OFFICERS ACTUALLY KNEW AND THE

INFORMATION THEY ACTUALLY RECEIVED AS OPPOSED TO WHAT THEY SHOULD

HAVE KNOWN IF THEY HAD MADE A REASONABLE INQUIRY.[17]  IT IS NOT

ENOUGH THAT A REASONABLE POLICE OFFICER WOULD HAVE KNOWN OF A

SUBSTANTIAL RISK OF SERIOUS SELF INFLICTED HARM OR THAT THE

POLICE OFFICERS SHOULD HAVE KNOWN.[18]  IN DETERMINING WHETHER THE

---

[15]  Burrell, 307 F.3d at 8 ("prison official subjectively
'must be aware of facts from which the inference could be
drawn that a substantial risk of serious harm exists, and he must
also draw the inference'").

[16] As noted in Burrell,

"[T]his standard, requiring an actual, subjective
appreciation of risk, has been likened to the standard for
determining criminal recklessness."  178 F.3d at 32.  Within
that subjective framework, a factfinder may conclude that a
prison official knew of a substantial risk from the very
fact that the risk was obvious.  Id.  In response, prison
officials may show that even if the risks were obvious to
others, it was not obvious to them.

307 F.3d at 8.

[17]  Alsina-Ortiz v. LaBoy, 400 F.3d 77, 82 (1st Cir. 2005)
("story is different as to Castillo" inasmuch as the "complaint
charged that Castillo knew of Ocasio's medical needs and did
nothing (also that he 'should have known,' but that allegation is
insufficient.").

[18]  "When instructing juries in deliberate indifference
cases with such issues of proof, courts should be careful to
ensure that the requirement of subjective culpability is not
lost.  It is not enough merely to find that a reasonable person
would have known, or that the defendant should have known, and

INDIVIDUAL OFFICERS KNEW OF THE SUBSTANTIAL RISK OF SERIOUS HARM

TO THE PRETRIAL DETAINEE, HOWEVER, YOU MAY CONCLUDE THAT A PRISON

OFFICIAL KNEW OF THAT SUBSTANTIAL RISK FROM THE VERY FACT THAT

THE RISK WAS OBVIOUS.  IN RESPONSE TO AN OBVIOUS RISK, IF ANY,

THE INDIVIDUAL OFFICERS THEN MAY SHOW THAT EVEN IF THE RISK WAS

OBVIOUS TO OTHERS, IT WAS NOT OBVIOUS TO THEM[19] ALTHOUGH THE

OFFICERS MAY NOT ESCAPE LIABILITY IF THEY REFUSED TO CONFIRM

INFERENCES THAT THEY STRONGLY SUSPECTED TO EXIST.[20]

---

juries should be instructed accordingly." <u>Farmer</u>, 511 U.S. at 843 n. 8.

[19]  "Within that subjective framework, a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  In response, prison officials may show that even if the risks were obvious to others, it was not obvious to them." <u>Burrell</u>, 307 F.3d at 8 (citation omitted).

[20]  As posited by the Court in <u>Farmer</u>:

While the obviousness of a risk is not conclusive and a prison official may show that the obvious escaped him, <u>see infra</u>, at 1982, he would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist (as when a prison official is aware of a high probability of facts indicating that one prisoner has planned an attack on another but resists opportunities to obtain final confirmation; or when a prison official knows that some diseases are communicable and that a single needle is being used to administer flu shots to prisoners but refuses to listen to a subordinate who he strongly suspects will attempt to explain the associated risk of transmitting disease).

511 U.S. at 843 n. 8

DELIBERATE INDIFFERENCE IS A STATE OF MIND THAT IS MORE THAN NEGLIGENCE.  THE PLAINTIFF DOES NOT, HOWEVER, NEED TO SHOW THAT THE INDIVIDUAL OFFICERS ACTED OR FAILED TO ACT WITH THE VERY PURPOSE OF CAUSING HARM OR WITH KNOWLEDGE THAT HARM WILL RESULT.[21]  RATHER, THE STANDARD IS MORE AKIN TO CRIMINAL RECKLESSNESS[22] OR WILFUL BLINDNESS.  IT IS DIRECTED AT A STATE OF MIND WHEREIN THE INDIVIDUAL OFFICERS CULPABLY IGNORED OR TURNED AWAY FROM WHAT WAS OTHERWISE APPARENT OR OBVIOUS.[23]  IN OTHER WORDS, THE PLAINTIFF MUST DEMONSTRATE THE INDIVIDUAL OFFICERS' ACTUAL KNOWLEDGE OF OR, AT LEAST, WILLFUL BLINDNESS TO THAT

---

[21]   Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d at 64.

[22]   Burrell, 307 F.3D at 8 ("this standard, requiring an actual, subjective appreciation of risk, has been likened to the standard for determining criminal recklessness").  As stated elsewhere by the First Circuit:

> This court stated that deliberate indifference requires the complainant [to] prove that the defendants had a culpable state of mind and intended wantonly to inflict pain . . . While this mental state can aptly be described as "recklessness," it is recklessness not in the tort-law sense but in the appreciably stricter criminal-law sense, requiring actual knowledge [or wilful blindness] of impending harm, easily preventable.

Manarite v. City of Springfield et al, 957 F.2d 953, 956 (1st Cir. 1992).

[23]   "Willful blindness and deliberate indifference are not mere negligence; these concepts are directed at a form of scienter in which the official culpably ignores or turns away from what is otherwise apparent."  Alsina-Ortiz v. LaBoy, 400 F.3d 77, 82 (1st Cir. 2005).

ELEVATED RISK.[24]

AS I INSTRUCTED YOU PREVIOUSLY, THERE MUST BE A SHOWING THAT THE INDIVIDUAL OFFICERS WERE BOTH AWARE OF FACTS FROM WHICH THE INFERENCE OF A SUBSTANTIAL RISK OF SERIOUS HARM COULD BE DRAWN AND THEY MUST DRAW THAT INFERENCE.  THIS REQUIRED KNOWLEDGE OF A SUBSTANTIAL RISK OF SERIOUS HARM MAY BE PROVEN BY DIRECT OR CIRCUMSTANTIAL EVIDENCE.[25]

EVEN IF THE PLAINTIFF SHOWS THAT THE INDIVIDUAL OFFICERS WERE BOTH AWARE OF FACTS FROM WHICH TO DRAW THE AFOREMENTIONED

---

[24]   The First Circuit in Consolu v. George, 58 F.3d 791 (1st Cir. 1995), approvingly commented about a prior First Circuit opinion involving the alleged failure to protect the inmate from self inflicted harm or suicide as follows:

> In Manarite, a jail suicide case, this Court explained that when liability for serious harm ... is at issue, a plaintiff must demonstrate "deliberate indifference" by showing (1) an unusually serious risk of harm . . . (2) defendant's actual knowledge of (or, at least, willful blindness to) that elevated risk, and (3) defendant's failure to take obvious steps to address that known, serious risk.  The risk, the knowledge, and the failure to do the obvious, taken together must show that the defendant is "deliberately indifferent" to the harm that follows.

Id. at 793; see also Elliott v. Cheshire County, 940 F.2d at 10 (noting, in suicide case, "there can be no deliberate indifference if the defendants are unaware that the detainee poses a risk of harm to himself" and further that "the risk must be 'large,' and 'strong'").

[25]   Calderon-Ortiz v. LaBoy-Alvarado, 300 F.3d at 65 ("The question of whether a prison official had the required knowledge of a substantial risk is a 'question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence'").

INFERENCE AND THEY DREW THAT INFERENCE, THE PLAINTIFF MUST IN ADDITION ESTABLISH THAT THE INDIVIDUAL OFFICERS WERE "INDIFFERENT" TO THAT KNOWN RISK.[26]  THE PLAINTIFF CANNOT ESTABLISH THE NECESSARY EIGHTH AMENDMENT VIOLATION UNLESS HE SHOWS THAT ONE OR MORE OF THE POLICE OFFICERS WERE "INDIFFERENT." IN OTHER WORDS, THE PLAINTIFF MUST THEREFORE SHOW BY A PREPONDERANCE OF THE EVIDENCE THAT THE INDIVIDUAL OFFICERS FAILED TO TAKE REASONABLE MEASURES TO AVERT THE POTENTIAL HARM. CONSEQUENTLY, IF THE INDIVIDUAL OFFICERS FAILED TO TAKE OBVIOUS STEPS TO ADDRESS THAT KNOWN, SERIOUS RISK THEN YOU MAY FIND THAT THEY RESPONDED UNREASONABLY TO THE RISK AND WERE, ACCORDINGLY, "INDIFFERENT."[27]  CONVERSELY, IF THE INDIVIDUAL OFFICERS

---

[26]  In resting its holding on a lack of indifference, the First Circuit in <u>Burrell</u> stated:

> Our holding rests on the "indifference" part of the second prong of the <u>Farmer</u> test--we hold that the officials responded reasonably to a known risk and so were not indifferent.  Given the totality of the circumstances as understood by prison officials at the time, the defendants did not fail to take reasonable measures to avert potential harm. Even evaluating the record in the light most favorable to Burrell, the prison officials' behavior was not unreasonable when considered within the context of what they knew.

<u>Burrell</u>, 307 F.3d at 8.

[27]  <u>Consolu v. George</u>, 58 F.3d at 794 ("In <u>Manarite</u>, a jail suicide case, this Court explained that 'when liability for serious harm . . . is at issue, a plaintiff must demonstrate "deliberate indifference" by showing . . . (3) defendant's failure to take obvious steps to address that known, serious risk'").

RESPONDED IN A REASONABLE MANNER TO THE KNOWN RISK THEN THEY WERE

NOT INDIFFERENT AND ARE NOT LIABLE.[28]  YOU SHOULD EXAMINE THE

TOTALITY OF THE CIRCUMSTANCES INCLUDING WHAT THE INDIVIDUAL

OFFICERS KNEW AND THE INFORMATION THEY RECEIVED AS OPPOSED TO THE

INFORMATION THEY DID NOT RECEIVE.[29]

---

[28]  <u>Id.</u>

[29]  <u>Burrell</u>, 307 F.3d at 8-9 ("focus is on what the corrections officers knew and whether they were deliberately indifferent.  There is no evidence that they knew of Burrell's unique definition of protective custody.").

## COMPENSATORY DAMAGES UNDER SECTION 1983

I WILL NOW INSTRUCT ON THE ISSUE OF DAMAGES.  THE FACT THAT
I AM INSTRUCTING YOU ON THE ISSUE OF DAMAGES SHOULD NOT BE
UNDERSTOOD AS AN OPINION BY ME AS TO WHETHER DAMAGES SHOULD OR
SHOULD NOT BE ALLOWED.  THIS IS SOLELY A MATTER WITHIN YOUR
DISCRETION IN ACCORDANCE WITH THE RULES OF LAW THAT I AM NOW
GIVING YOU.  THIS SAME PRINCIPLE APPLIES TO YOUR ASSESSMENT OF
DAMAGES, IF ANY, IN THE EVENT YOU FIND LIABILITY AGAINST THE CITY
NEGLIGENCE.

IN THE EVENT YOU FIND IN FAVOR OF THE PLAINTIFF ON THE
SECTION 1983 CLAIM AGAINST THE INDIVIDUAL OFFICERS, THEN YOU MAY
AWARD THE PLAINTIFF SUCH SUM AS YOU BELIEVE WILL FAIRLY AND
REASONABLY COMPENSATE THE PLAINTIFF FOR ANY DAMAGES THAT YOU
DETERMINE ARE CAUSED BY THE INDIVIDUAL OFFICERS' MISCONDUCT.
SUCH DAMAGES ARE TERMED COMPENSATORY DAMAGES.  THEY ARE DESIGNED
TO PROVIDE COMPENSATION FOR THE INJURY CAUSED TO CHARLES SYLVA BY
THE INDIVIDUAL OFFICERS' CONDUCT IN DEPRIVING CHARLES SYLVA OF
HIS CIVIL RIGHTS.

I CAUTION YOU THAT COMPENSATORY DAMAGES ARE ONLY AVAILABLE
UNDER THE PLAINTIFF'S SECTION 1983 CLAIM IF THE PLAINTIFF
ESTABLISHES AN ACTUAL INJURY CAUSED BY THE DENIAL OF CHARLES
SYLVA'S CONSTITUTIONAL RIGHTS.  IF YOU FIND THAT CHARLES SYLVA
SUFFERED NO SUCH ACTUAL INJURY, THEN YOU SHOULD NOT AWARD THE

27

PLAINTIFF COMPENSATORY DAMAGES.  WHAT I AM ASKING YOU TO DO IS TO FAIRLY AND REASONABLY COMPENSATE THE PLAINTIFF FOR THE HARM OR LOSS RESULTING FROM AN ACTUAL INJURY.  AN AWARD OF COMPENSATORY DAMAGES SHOULD NOT INCLUDE A SUM BASED ON THE VALUE OF THE CONSTITUTIONAL RIGHT AT ISSUE.  COMPENSATORY DAMAGES BASED ON THE ABSTRACT VALUE OR IMPORTANCE OF CONSTITUTIONAL RIGHTS ARE NOT PERMISSIBLE.

IN ORDER TO ESTABLISH THE NECESSARY CAUSATION OF DAMAGES IN A SECTION 1983 LAWSUIT, THE PLAINTIFF MUST SHOW BY A PREPONDERANCE OF THE EVIDENCE THAT THE CONDUCT ON THE PART OF THE INDIVIDUAL OFFICERS WAS BOTH A CAUSE IN FACT AND A PROXIMATE OR LEGALLY SIGNIFICANT CAUSE OF THE INJURIES SUFFERED.[30] ACCORDINGLY, THERE MUST BE A SUFFICIENT CAUSAL CONNECTION BETWEEN THE ACTS OF THE INDIVIDUAL OFFICERS AND THE ALLEGED INJURY.  AN INJURY OR DAMAGE IS PROXIMATELY CAUSED BY AN ACT OR BY A FAILURE

---

[30] Olsen v. Correiro, 189 F.3d 52, 66-67 & n. 16 (1st Cir. 1999) (noting that traditional principles of tort law typically apply and such principles are binary in the sense of requiring "but for" and proximate or legal cause); Rodriguez-Circilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997) ("plaintiffs cannot establish that the conduct of the defendants, in not enforcing the temporary detention order, was the legal cause of an attack occurring much later . . . . The concept of proximate causation restricts tort liability to those whose conduct, beyond falling within the infinite causal web leading to an injury, was a legally significant cause.") (citations omitted); Martinez-Rivera v. Sanchez Ramos, 2006 WL 1284875 at * 2 (D.P.R. May 4, 2006) ("to succeed in a section 1983 action, plaintiffs must prove that defendants' actions were a cause in fact or a proximate cause of their injury").

TO ACT WHENEVER IT APPEARS FROM THE EVIDENCE IN THE CASE THAT THE ACT OR OMISSION PLAYED A SUBSTANTIAL PART IN BRINGING ABOUT OR ACTUALLY CAUSING THE INJURY OR DAMAGE, AND THAT THE INJURY OR DAMAGE WAS EITHER A DIRECT RESULT OR A REASONABLE PROBABLE CONSEQUENCE OF THE ACT OR OF THE OMISSION.[31]

YOU SHOULD ALSO RECOGNIZE THAT THERE ARE SOME EVENTS WHICH BREAK THE CAUSAL CHAIN WHICH THE LAW TERMS SUPERCEDING CAUSES. THE INDIVIDUAL OFFICERS WILL NOT, HOWEVER, BE RELIEVED OF LIABILITY BY AN INTERVENING CAUSE THAT WAS REASONABLY FORESEEABLE, EVEN IF THE INTERVENING FORCE MAY HAVE DIRECTLY CAUSED THE HARM.[32]  AN UNFORESEEN AND ABNORMAL INTERVENTION, ON THE OTHER HAND, WOULD BREAK THE CHAIN OF CAUSALITY THUS SHIELDING THE CITY FROM LIABILITY.[33]

I ALSO ADVISE YOU THAT DAMAGES MUST BE REASONABLE.  YOU ARE

---

[31] <u>Figueroa-Torres v. Toledo-Davila</u>, 232 F.3d 270, 274 (1st Cir. 274) (approving above language in instruction albeit in the context of negating the defendant's argument based on egg shell doctrine).

[32] <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 561 (1st Cir. 1989) ("negligent defendant will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have 'directly' caused the harm").

[33] <u>Gutierrez-Rodriguez v. Cartagena</u>, 882 F.2d at 561 ("A negligent defendant will not be relieved of liability by an intervening cause that was reasonably foreseeable, even if the intervening force may have 'directly' caused the harm . . . . An 'unforeseen and abnormal' intervention, on the other hand, 'breaks the chain of causality,' thus shielding the defendant from liability").

NOT PERMITTED TO AWARD SPECULATIVE DAMAGES.  SO YOU ARE NOT TO INCLUDE IN ANY VERDICT COMPENSATION FOR ANY PROSPECTIVE LOSS WHICH, ALTHOUGH POSSIBLE, IS NOT REASONABLY CERTAIN TO OCCUR IN THE FUTURE.  THE QUESTION OF DAMAGES IS NOT AN OPPORTUNITY TO SPECULATE OR ENGAGE IN CONJECTURE.

WITH THESE PRINCIPLES IN MIND, YOU MAY AWARD THE PLAINTIFF, AS THE ADMINISTRATOR OF THE ESTATE OF CHARLES SYLVA,[34] THE COMPONENTS OR ELEMENTS OF COMPENSATORY DAMAGES THAT ARE SET FORTH LATER IN THESE INSTRCUTIONS UNDER THE SECTION CAPTIONED "DAMAGES FOR NEGLIGENCE."  ACCORDINGLY, I REFER YOU TO THOSE INSTRUCTIONS.

---

[34]    "The First Circuit has consistently allowed section 1983 claims brought by the estate of the deceased, on his or her behalf, when the defendants' unconstitutional conduct was the proximate cause of death."  Martinez-Rivera v. Sanchez Ramos, 2006 WL 1284875 at * 4 (D.P.R. May 4, 2006) (citing Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005)).

## PUNITIVE DAMAGES UNDER SECTION 1983

IN THE EVENT YOU DECIDE TO AWARD COMPENSATORY DAMAGES UNDER SECTION 1983, THE LAW ALSO ALLOWS YOU TO AWARD PUNITIVE DAMAGES IF YOU FIND THE INDIVIDUAL POLICE OFFICERS LIABLE UNDER SECTION 1983.

PUNITIVE DAMAGES, HOWEVER, ARE ONLY AVAILABLE UPON A SHOWING OF THE REQUISITE INTENT.  THUS, IN ORDER TO AWARD PUNITIVE DAMAGES YOU MUST FIND THAT THE CONDUCT OF ONE OR MORE OF THE INDIVIDUAL POLICE OFFICERS WAS MOTIVATED BY AN EVIL MOTIVE OR INTENT OR INVOLVED A RECKLESS OR CALLOUS INDIFFERENCE TO CHARLES SYLVA'S FEDERALLY PROTECTED RIGHTS.

PUNITIVE DAMAGES ARE DESIGNED FOR THE PURPOSE OF PUNISHING THE DEFENDANT FOR WILFUL OR MALICIOUS CONDUCT AS WELL AS FOR DETERRING OTHERS FROM ENGAGING IN SIMILAR BEHAVIOR.  THUS, IN ADDITION TO THE FOREGOING, PUNITIVE DAMAGES ARE PERMISSIBLE ONLY IN INSTANCES WHERE A DEFENDANT'S CONDUCT IS THE TYPE THAT DEMANDS DETERRENCE AND PUNISHMENT IN EXCESS OF COMPENSATORY DAMAGES. WHETHER TO AWARD PUNITIVE DAMAGES AND THE AMOUNT, IF ANY, OF SUCH DAMAGES IS A MATTER WHICH LIES ENTIRELY WITHIN YOUR SOUND DISCRETION.

## STATE CLAIM FOR NEGLIGENCE

IN ADDITION TO THE FEDERAL LAW CLAIM FOR THE VIOLATION OF CHARLES SYLVA'S CONSTITUTIONAL RIGHTS, THE PLAINTIFF BRINGS A CLAIM FOR NEGLIGENCE UNDER THE MASSACHUSETTS TORT CLAIMS ACT AGAINST THE CITY.  THE MASSACHUSETTS TORT CLAIMS ACT PROVIDES THAT PUBLIC EMPLOYERS, SUCH AS THE CITY OF QUINCY, SHALL BE LIABLE FOR INJURY OR LOSS OF PROPERTY OR PERSONAL INJURY OR DEATH CAUSED BY THE NEGLIGENT OR WRONGFUL ACT OR OMISSION OF ANY PUBLIC EMPLOYEE WHILE ACTING WITHIN THE SCOPE OF HIS OFFICE OR EMPLOYMENT IN THE SAME MANNER AND TO THE SAME EXTENT AS A PRIVATE INDIVIDUAL WOULD BE LIABLE.[35]  THE CITY IS THEREFORE LIABLE FOR THE NEGLIGENCE OF ITS POLICE OFFICERS, ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT, IN THE EVENT SUCH NEGLIGENCE PROXIMATELY CAUSED THE DEATH OF CHARLES SYLVA.  IN ORDER TO RECOVER UNDER THIS CLAIM, THE PLAINTIFF MUST SHOW, BY A PREPONDERANCE OF THE EVIDENCE, THAT ONE OR MORE OF THE POLICE OFFICERS OF THE CITY ACTING IN THE SCOPE OF HIS EMPLOYMENT WAS NEGLIGENT AND THAT SUCH NEGLIGENCE WAS THE PROXIMATE CAUSE OF CHARLES SYLVA'S INJURY.[36]

---

[35]  Mass. Gen. L. ch. 258, § 2; Plaintiff's Proposed Instruction No. 12.

[36]  As explained by one court in this district:

Counts I and II are based on the same Massachusetts statute providing remedies for wrongful death as counts III and IV, respectively. As in any negligence action, to state a claim for negligent causation of wrongful death, a plaintiff proceeding under this statute must show that the defendant owed a duty of care to the plaintiff, which duty the

## NEGLIGENCE

NEGLIGENCE IS A BREACH OF A DUTY TO USE REASONABLE CARE. THE CONCEPT OF NEGLIGENCE THEREFORE REQUIRES BOTH THE EXISTENCE OF A DUTY OWED BY THE POLICE OFFICERS INVOLVED TO CHARLES SYLVA AND THE BREACH OF THAT DUTY ON THE PART OF THOSE POLICE OFFICERS OF THE CITY.  THE FOCUS OF YOUR INQUIRY WITH RESPECT TO THE PLAINTIFF'S NEGLIGENCE CLAIM IS THE CONDUCT OF THE POLICE OFFICERS.

NEGLIGENCE IS GENERALLY DEFINED AS THE FAILURE OF A RESPONSIBLE PERSON, EITHER BY OMISSION OR BY ACTION, TO EXERCISE THAT DEGREE OF CARE, VIGILANCE AND FORETHOUGHT WHICH, IN THE DISCHARGE OF THE DUTY THEN RESTING ON HIM, A PERSON OF ORDINARILY REASONABLE, CAUTIOUS, PRUDENT PERSON WOULD HAVE EXERCISED UNDER ALL THE FACTS AND CIRCUMSTANCES EXISTING ON DECEMBER 17, 2000.[37] MORE SIMPLY STATED, NEGLIGENCE IS THE FAILURE TO EXERCISE THAT DEGREE OF CARE THAT A REASONABLE PERSON WOULD EXERCISE UNDER THE CIRCUMSTANCES.[38]  THE POLICE OFFICERS INVOLVED ARE THEREFORE HELD TO THE STANDARD OF AN ORDINARILY REASONABLE, CAUTIOUS, PRUDENT

---

defendant breached, and that the breach was a proximate cause of the plaintiff's injury (i.e., the decedent's death).

Estate of Halloran v. United States, 268 F.Supp.2d 91,94 (D.Mass. 2003).

[37]  Plaintiff's Proposed Instruction No. 10; accord Massachusetts Jury Instructions (Civil), § 3.1 (1997).

[38]  Plaintiff's Proposed Instruction No. 10; accord Massachusetts Jury Instructions (Civil), § 3.1 (1997).

POLICE OFFICER IN LIKE CIRCUMSTANCES.[39]

NEGLIGENCE MAY BE DOING SOMETHING THAT THE AN ORDINARILY REASONABLE, CAUTIOUS, PRUDENT POLICE OFFICER WOULD NOT HAVE DONE UNDER ALL THE FACTS AND CIRCUMSTANCES EXISTING ON DECEMBER 17, 2000.[40]  IT MAY ALSO BE THE FAILURE TO DO SOMETHING THAT THE ORDINARILY REASONABLE, CAUTIOUS, PRUDENT POLICE OFFICER WOULD HAVE DONE UNDER ALL THE FACTS AND CIRCUMSTANCES EXISTING ON DECEMBER 17, 2000.[41]

YOU WILL NOTICE THAT THE STANDARD IS NOT THE CONDUCT OF THE MOST CAREFUL POLICE OFFICER OR OF THE LEAST CAREFUL POLICE OFFICER BUT RATHER IT IS THE CONDUCT OF AN ORDINARILY REASONABLE, CAUTIOUS, PRUDENT POLICE OFFICER FACED WITH THE SAME SITUATION AND UNDER THE SAME CIRCUMSTANCES AS THE PERSON WHOSE CONDUCT IS BEING CONSIDERED.[42]  THUS, IN DETERMINING WHAT CONSTITUTES ORDINARY CARE, YOU MAY ALSO CONSIDER WHAT THE POLICE OFFICERS KNEW OR SHOULD HAVE KNOWN ABOUT CHARLES SYLVA'S DESTRUCTIVE

---

[39]  Adapting Plaintiff's Proposed Instruction No. 10 to the conduct of a police officer as opposed to "individual" or "person."

[40]  Plaintiff's Proposed Instruction No. 10; accord Massachusetts Jury Instructions (Civil), § 3.1 (1997).

[41]  Plaintiff's Proposed Instruction No. 10; accord Massachusetts Jury Instructions (Civil), § 3.1 (1997).

[42]  Plaintiff's Proposed Instruction No. 10 substituting "police officer" for the word "person;" accord Massachusetts Jury Instructions (Civil), § 3.1 (1997).

TENDENCIES.[43]

WHEN IT IS ALLEGED, AS IT HAS IN THIS CASE, THAT A PERSON HAS BEEN NEGLIGENT, IT BECOMES YOUR DUTY TO DETERMINE ON THE BASIS OF THE EVIDENCE JUST WHAT WAS THE CONDUCT OF THAT POLICE OFFICER AND, HAVING DONE THAT, TO MEASURE THAT CONDUCT AGAINST THE CONDUCT OF THE ORDINARILY REASONABLE, CAUTIOUS, PRUDENT POLICE OFFICER FACED WITH THE SAME FACTS OR CIRCUMSTANCES.  IF THE CONDUCT OF THE QUINCY POLICE OFFICER IN QUESTION CONFORMS TO WHAT WOULD HAVE BEEN THE CONDUCT OF THE ORDINARILY REASONABLE, CAUTIOUS, PRUDENT POLICE OFFICER FACED WITH THE SAME FACTS OR CIRCUMSTANCES, THEN YOU SHOULD FIND THAT THE QUINCY POLICE OFFICER IN QUESTION HAS NOT BEEN NEGLIGENT.  IF, ON THE OTHER HAND, THE QUINCY POLICE OFFICER IN QUESTION DID SOMETHING THAT THE ORDINARILY REASONABLE, CAUTIOUS, PRUDENT POLICE OFFICER WOULD NOT HAVE DONE, OR FAILED TO DO SOMETHING THAT THE ORDINARILY REASONABLE, CAUTIOUS, PRUDENT POLICE OFFICER WOULD HAVE DONE, THEN YOU WOULD BE WARRANTED IN FINDING THAT THE POLICE OFFICER IN

---

[43]  Plaintiff's Proposed Instruction No. 10, ¶ 5.  "In determining what constitutes ordinary care, the condition of the patient should be taken into consideration.  And in the case of a mental patient, the care must be reasonably adapted and proportioned to his known suicidal, homicidal, or other like destructive tendencies."  United States v. Gray, 199 F.2d 239, 242 (10th Cir. 1952) (Federal Tort Claims Act claim).  "We have found that Defendants owed a duty of care and protection to their residents, including Plaintiff, to prevent harm to them, and that they had a duty to supervise any resident who had a propensity to cause harm to others that was known or that should have been known by Defendants."  Guernsey v. Country Living Personal Care Homes, 2006 WL 1412765 at * 12 (M.D.Pa. May 19, 2006).

QUESTION HAD BEEN NEGLIGENT.[44]

FINALLY, YOU SHOULD ALSO RECOGNIZE THAT THE PLAINTIFF'S NEGLIGENCE CLAIM IS BROUGHT AGAINST THE CITY AND NOT AGAINST ONE OR MORE OF ITS POLICE OFFICERS.  ACCORDINGLY, IN ORDER TO HOLD THE CITY LIABLE FOR THE NEGLIGENCE OF ONE OR MORE OF ITS POLICE OFFICERS, YOU MUST FIND THAT THE POLICE OFFICER IN QUESTION WAS ACTING WITHIN THE SCOPE OF HIS OFFICE OR EMPLOYMENT AT THE TIME IN QUESTION.[45]

---

[44]  Plaintiff's Proposed Instruction No. 10 substituting "police officer" for the word "person;" accord Massachusetts Jury Instructions (Civil), § 3.1 (1997).

[45]  Mass. Gen. L. ch. 258, § 2.

## PROXIMATE CAUSE

NOW, IF YOU FIND THAT THE PLAINTIFF HAS SHOWN BY A PREPONDERANCE OF THE EVIDENCE THAT THE POLICE OFFICERS, WHILE ACTING WITHIN THE SCOPE OF THEIR EMPLOYMENT, WERE NEGLIGENT, YOU MUST NEXT CONSIDER WHETHER SUCH NEGLIGENCE WAS A "PROXIMATE CAUSE" OF CHARLES SYLVA'S INJURIES.  THE PLAINTIFF IS REQUIRED TO ESTABLISH PROXIMATE CAUSE BECAUSE NEGLIGENCE STANDING BY ITSELF HAS NO LEGAL CONSEQUENCE.[46]  CAUSATION IS SOMETHING THAT YOU LOOK AT SEPARATELY.  THE MERE FACT THAT THERE WAS AN INJURY OR THE MERE FACT THAT THERE MAY HAVE BEEN NEGLIGENCE IS NOT SUFFICIENT TO ESTABLISH THAT THE NEGLIGENCE OF A QUINCY POLICE OFFICER PROXIMATELY CAUSED CHARLES SYLVA'S INJURY.

PROXIMATE CAUSE IS A SUBSTANTIAL CAUSE.[47]  AN INJURY OR DAMAGE IS PROXIMATELY CAUSED BY AN ACT OR BY A FAILURE TO ACT WHENEVER IT APPEARS FROM THE EVIDENCE IN THE CASE THAT THE ACT OR OMISSION PLAYED A SUBSTANTIAL PART IN BRINGING ABOUT OR ACTUALLY CAUSING THE INJURY OR DAMAGE, AND THAT THE INJURY OR DAMAGE WAS EITHER A DIRECT RESULT OR A REASONABLE PROBABLE CONSEQUENCE OF THE ACT OR OF THE OMISSION.[48]  ESTABLISHING PROXIMATE CAUSE THUS

---

[46]    Plaintiff's Proposed Instruction No. 11; accord Massachusetts Jury Instructions (Civil), § 3.2 (1997).

[47]    Massachusetts Jury Instructions (Civil), § 3.2 (1997) ("'Proximate cause' means a substantial cause").

[48]    The court in Figueroa-Torres v. Toeldo-Davilla, 232 F.3d 270, 274-275 (1st Cir. 200), approved the following instruction as negating an argument based upon the egg shell doctrine:

An injury or damage is proximately caused by an act or by a failure to act whenever it appears from the evidence in the

37

REQUIRES THE PLAINTIFF TO ESTABLISH THAT THE INJURY WAS
REASONABLY FORESEEABLE TO A PERSON IN THE POSITION OF THE QUINCY
POLICE OFFICER IN QUESTION.[49]

THE PLAINTIFF MUST SHOW ACTUAL CAUSATION, THAT IS, THAT THE
POLICE OFFICERS' NEGLIGENCE WAS A "BUT-FOR" CAUSE OF THE INJURY
AND THAT THEIR ACT OR OMISSION PLAYED A SUBSTANTIAL PART IN
BRINGING ABOUT CHARLES SYLVA'S INJURY.  ACTUAL CAUSATION OF AN
INJURY IS GENERALLY DEFINED AS THAT CAUSE WHICH IN CONTINUOUS
SEQUENCE, UNBROKEN BY ANY EFFICIENT, INTERVENING CAUSE, PRODUCES
AN EVENT WITHOUT WHICH THE ACCIDENT WOULD NOT HAVE OCCURRED.[50]
THE CITY WILL NOT, HOWEVER, BE RELIEVED OF LIABILITY FOR THE
CONDUCT OF A NEGLIGENT POLICE OFFICER BY AN INTERVENING CAUSE
THAT WAS REASONABLY FORESEEABLE, EVEN IF THE INTERVENING FORCE
MAY HAVE DIRECTLY CAUSED THE HARM.  AN UNFORESEEN AND ABNORMAL
INTERVENTION, ON THE OTHER HAND, BREAKS THE CHAIN OF CAUSALITY,
THUS SHIELDING THE CITY FROM LIABILITY.[51]

---

case that the act or omission played a substantial part in
bringing about or actually causing the injury or damage, and
that the injury or damage was either a direct result or a
reasonable probable consequence of the act or of the
omission.

[49] Massachusetts Jury Instructions (Civil), § 3.2 (1997)
("It must be established that the plaintiff's injury was
reasonably foreseeable to a person in defendant's position").

[50] Massachusetts Jury Instructions (Civil), § 3.2 (1997)
(using similar language)

[51] Gutierrez-Rodriguez v. Cartagena, 882 F.2d at 561 ("A
negligent defendant will not be relieved of liability by an
intervening cause that was reasonably foreseeable, even if the
intervening force may have 'directly' caused the harm . . . . An
'unforeseen and abnormal' intervention, on the other hand,

THIS IS NOT TO SAY THAT THERE CAN ONLY BE ONE PROXIMATE CAUSE OF AN INJURY.  ON THE CONTRARY, MANY FACTORS OR THINGS, OR THE CONDUCT OF TWO OR MORE PERSONS, MAY OPERATE AT THE SAME TIME, EITHER INDEPENDENTLY OR TOGETHER, TO CAUSE INJURY OR DAMAGE AND IN SUCH A CASE, EACH MAY BE A PROXIMATE CAUSE.  SIMPLY BECAUSE ANOTHER PERSON'S NEGLIGENCE WAS ALSO A FACTOR IN CAUSING THE INJURY DOES NOT RELIEVE ANOTHER PARTY OF LIABILITY IF THAT PARTY'S NEGLIGENCE PLAYED A SUBSTANTIAL PART IN CAUSING THE INJURY.

---

'breaks the chain of causality,' thus shielding the defendant from liability").

## DAMAGES FOR NEGLIGENCE

I WILL NOW INSTRUCT YOU ON THE SUBJECT OF DAMAGES IN THE EVENT YOU FIND THE CITY LIABLE FOR NEGLIGENCE.  AGAIN, THE FACT THAT I AM INSTRUCTING YOU AS TO THE SUBJECT OF DAMAGES IS NOT TO BE UNDERSTOOD AS AN OPINION BY ME AS TO WHETHER DAMAGES SHOULD OR SHOULD NOT BE ALLOWED.  THIS IS A MATTER SOLELY WITHIN YOUR DISCRETION IN ACCORDANCE WITH THE RULES OF LAW THAT I AM NOW GIVING YOU.

IN ADDITION, AS I PREVIOUSLY INSTRUCTED IN THE CONTEXT OF AN AWARD OF DAMAGES UNDER SECTION 1983, DAMAGES MUST BE REASONABLE. YOU ARE NOT PERMITTED TO AWARD SPECULATIVE DAMAGES.  YOU ARE NOT TO INCLUDE IN ANY VERDICT COMPENSATION FOR ANY PROSPECTIVE LOSS WHICH, ALTHOUGH POSSIBLE, IS NOT REASONABLY CERTAIN TO OCCUR IN THE FUTURE.  THE QUESTION OF DAMAGES IS NOT AN OPPORTUNITY TO SPECULATE OR ENGAGE IN CONJECTURE.

IF YOU FIND A PREPONDERANCE OF THE EVIDENCE SUPPORTS THE PLAINTIFFS' CLAIM THAT THE POLICE OFFICERS OF THE CITY WERE NEGLIGENT THEN YOU MAY AWARD COMPENSATORY DAMAGES TO THE PLAINTIFF.  SUCH COMPENSATORY DAMAGES ARE BASED UPON THE FAIR MONETARY VALUE OF CHARLES SYLVA TO [HIS NEXT OF KIN;[52] OR YOU MAY WISH TO INSERT NAMES OF SURVIVORS ENTITLED TO RECOVER FROM THE ESTATE].[53]  WHAT YOU MUST DETERMINE, THEREFORE, IS THE FAIR

---

[52]  Mass. Gen. L. ch. 229, § 1.

[53]  Massachusetts Jury Instructions (Civil), § 4.1 (1997) (general instruction in wrongful death cases; "person who

MONETARY VALUE OF CHARLES SYLVA TO HIS [NEXT OF KIN OR INSERT NAMES] AS OF THE TIME OF HIS DEATH.[54]

THE ELEMENTS OF THE COMPENSATORY DAMAGES THAT THE PLAINTIFF, AS ADMINISTRATOR OF THE ESTATE OF CHARLES SYLVA, IS ENTITLED TO RECOVER ARE THE FOLLOWING:

(1) THE FAIR MONETARY VALUE OF THE DECEDENT TO [THE NEXT OF KIN OF CHARLES SYLVA; INSERT NAMES OF REMAINING SIBLINGS] INCLUDING BUT NOT LIMITED TO COMPENSATION FOR THE LOSS OF THE SERVICES, PROTECTION, CARE, ASSISTANCE, SOCIETY, COMPANIONSHIP, COMFORT, GUIDANCE, COUNSEL, AND ADVICE OF THE DECEDENT TO THE ABOVE PERSONS WHICH THEY COULD REASONABLY HAVE EXPECTED TO RECEIVE FROM THE DECEDENT WERE IT NOT FOR THE WRONGFUL DEATH;[55]

_____

negligently . . . causes the death of another must respond in damages equivalent to the fair monetary value of the decedent to [his][her] surviving relatives or dependents"). The wrongful death statute allows for recovery of compensatory damages in addition to punitive damages, which are not recoverable against the City, Mass. Gen. L. ch. 258, § 2, and funeral expenses, which the plaintiff did not submit an instruction upon. See Massachusetts Jury Instructions (Civil), § 4.3 (1997) (listing damages recoverable as including, "Compensatory damages in the amount of the fair monetary value of the decedent to the persons entitled to receive the damages recovered").

[54] Massachusetts Jury Instructions (Civil), § 4.1 (1997) ("What must be determined, therefore, is the fair monetary value of [the decedent] to [his][her] _____, as of the time of [his][her] death").

[55] Mass. Gen. L. ch. 229, § 2; Schultz v. Grogean, 548 N.E.2d 180, 181 (Mass. 1990) (quoting statute); Massachusetts Jury Instructions (Civil), § 4.1 (1997) ("With regard to intangible value, the statute provides that the survivors shall also be entitled to compensation for the loss of services, . . .

AND

(2) THE PAIN AND SUFFERING, IF ANY, EXPERIENCED BY CHARLES

SYLVA PRIOR TO HIS DEATH THAT WAS PROXIMATELY CAUSED BY THE

NEGLIGENCE  OF THE INDIVIDUAL OFFICERS.[56]

I FURTHER INSTRUCT YOU THAT SUCH DAMAGES DO NOT INCLUDE THE

COMPONENTS OF THE GRIEF, MENTAL ANGUISH AND BEREAVEMENT

EXPERIENCED BY THE SURVIVORS.  SUCH GRIEF, ANGUISH, AND

BEREAVEMENT AS ONE MAY NORMALLY EXPECT UPON THE DEATH OF A

RELATIVE SHOULD NOT BE INCLUDED AS PART OF ANY DAMAGES AWARD.[57]

---

[listing above items] . . .and advice which they could reasonably
have expected to receive from the decedent were it not for the
wrongful death").

[56]  "'[P]ain and suffering,' in the wrongful death context,
usually refers to pain and suffering of the decedent rather than
to that of the survivors." MacCuish v. Volkswagenwerk, 494
N.E.2d 390, 401 (Mass.App.Ct. 1986). "A relative may bring a
claim under § 1983 on decedent's behalf, for decedent's pain and
suffering, but a relative may not bring a personal claim under §
1983 for the death of a relative." Natriello v. Flynn, 837
F.Supp. 17, 19 (D.Mass. 1993).

[57]  MacCuish v. Volkswagenwerk, 494 N.E.2d 390, 401
(Mass.App.Ct. 1986).  As explained by the First Circuit in
Mitchell v. United States, 141 F.3d 8, 20-21 (1st Cir. 1998), in
wrongful death action brought by the administratrix of the
decedent's estate affirming the trial judge's denial of
compensation to the children:

> The trial judge heard testimony from all of Mr. Hassey's
> children as to their relationship with him and the effect
> that his death has had upon them.  The fact that the judge
> did so even after the Government had vigorously argued that
> the children were not entitled to recover under section 2
> indicates that the judge correctly understood that Mr.
> Hassey's children were presumptive takers under section 1.
> After hearing the children's testimony, the trial judge
> still chose to award them nothing.  Upon reviewing the

THIS LIST OF VALUES, HOWEVER, IS NOT EXCLUSIVE.[58]  IN
DETERMINING THE INTANGIBLE VALUE OF THE DECEDENT TO THE [NEXT OF
KIN; OR INSERT NAMES] YOU SHOULD TAKE INTO CONSIDERATION ALL OF
THE RELEVANT FACTS AND CIRCUMSTANCES.  WHERE, AS HERE, THE [NEXT
OF KIN OR INSERT NAMES] OF CHARLES SYLVA CONSIST OF MORE THAN ONE
INDIVIDUAL, YOU MAY EXAMINE THE VALUE OF THE DECEDENT TO EACH OF
THOSE INDIVIDUALS.[59]

---

relevant portion of the trial transcript, we find that it
would not have been error for the trial judge to find that
the loss suffered by the decedent's children did not exceed
such grief, anguish, and bereavement as one may normally
expect upon the death of a parent.  As the Administratrix
admits in her brief, recovery under section 2 "was not
intended to include components of 'grief, anguish and
bereavement of the survivors.'"  MacCuish v. Volkswagenwerk,
A.G., 22 Mass.App.Ct. 380, 494 N.E.2d 390, 398 (1986).

[58]  Massachusetts Jury Instructions (Civil), § 4.1 (1997)
(setting forth statutory list with the proviso to the jury that
"The list of values set forth in the statute is not exclusive.
It provides that compensation shall include but shall not be
limited to the listed factors").

[59]  Massachusetts Jury Instructions (Civil), § 4.1 (1997)
contains the following instruction in brackets:

[In cases where the survivors consist of more than a single
individual, the jury may make a separate determination of
the value of the decedent, both tangible and intangible, to
each survivor.  The jury should begin with a presumption
that the value of the decedent to each of the multiple
survivors is equal, but if there is credible evidence, and
the jury finds, that the decedent's value to one or more of
[his][her] survivors was greater than [his][her] value to
others, separate determinations of value should be made.]

## UNANIMOUS VERDICT AND CONCLUSION

YOUR VERDICT MUST REPRESENT THE CONSIDERED JUDGMENT OF EACH JUROR.  IN ORDER TO RETURN A VERDICT, IT IS NECESSARY THAT EACH JUROR AGREE THERETO.  IN OTHER WORDS, YOUR VERDICT MUST BE UNANIMOUS.

IT IS YOUR DUTY AS JURORS TO CONSULT WITH ONE ANOTHER, AND TO DELIBERATE IN AN EFFORT TO REACH AGREEMENT IF YOU CAN DO SO WITHOUT VIOLENCE TO INDIVIDUAL JUDGMENT.  EACH OF YOU MUST DECIDE THE CASE FOR YOURSELF, BUT ONLY AFTER AN IMPARTIAL CONSIDERATION OF THE EVIDENCE IN THE CASE WITH YOUR FELLOW JURORS.  IN THE COURSE OF YOUR DELIBERATIONS, DO NOT HESITATE TO RE-EXAMINE YOUR OWN VIEWS AND TO CHANGE YOUR OPINION IF CONVINCED IT IS ERRONEOUS.  BUT DO NOT SURRENDER YOUR HONEST CONVICTION AS TO THE WEIGHT OR EFFECT OF THE EVIDENCE SOLELY BECAUSE OF THE OPINION OF YOUR FELLOW JURORS, OR FOR THE MERE PURPOSE OF RETURNING A VERDICT.

REMEMBER AT ALL TIMES, YOU ARE NOT PARTISANS.  YOU ARE JUDGES -- JUDGES OF THE FACTS.  YOUR SOLE INTEREST IS TO SEEK THE TRUTH FROM THE EVIDENCE IN THE CASE.

WHEN YOU RETIRE YOU SHOULD ELECT ONE MEMBER OF THE JURY AS YOUR FOREPERSON.  THAT PERSON WILL PRESIDE OVER YOUR DELIBERATIONS AND BE YOUR SPOKESPERSON HERE IN COURT.  A FORM OF VERDICT HAS BEEN PREPARED FOR YOUR CONVENIENCE.

44

YOU WILL TAKE THE VERDICT FORM TO THE JURY ROOM, AND WHEN YOU HAVE REACHED UNANIMOUS AGREEMENT AS TO YOUR VERDICT, YOU WILL HAVE THE FOREPERSON FILL IT IN, DATE AND SIGN IT, AND THEN RETURN TO THE COURTROOM.

IF, DURING YOUR DELIBERATIONS, YOU SHOULD DESIRE TO COMMUNICATE WITH THE COURT, PLEASE REDUCE YOUR MESSAGE OR QUESTION TO WRITING SIGNED BY THE FOREPERSON, AND PASS THE NOTE TO THE MARSHAL WHO WILL BRING IT TO MY ATTENTION.  I WILL THEN RESPOND AS PROMPTLY AS POSSIBLE, EITHER IN WRITING OR BY HAVING YOU RETURNED TO THE COURTROOM SO THAT I CAN ADDRESS YOU ORALLY. I CAUTION YOU, HOWEVER, WITH REGARD TO ANY MESSAGE OR QUESTION YOU MIGHT SEND, THAT YOU SHOULD NEVER STATE OR SPECIFY YOUR NUMERICAL DIVISION AT TIME.